UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CORSAIR SPECIAL SITUATIONS FUND, L.P.** | * | |
| | * | |
| Plaintiff/Judgment Creditor, | * | CIVIL ACTION NO.: 3:11-CV-1980 (JCH) |
| v. | * | |
| **ENGINEERED FRAMING SYSTEMS, INC.,** *et al.* | * | |
| | * | |
| Defendants/Judgment Debtors. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF MOTION FOR TURNOVER ORDER

Plaintiff/Judgment Creditor, Corsair Special Situations Fund, L.P. ("Corsair"), by its undersigned attorneys, hereby files this Memorandum in Support of Motion for Turnover Order.

### INTRODUCTION

The issue before the Court arises from Corsair's efforts to collect a multi-million dollar judgment that it obtained in June 2010 against, among others, EFS Structures, Inc. ("Structures"). Structures is involved in the design and construction of multi-story residential buildings along the east coast of the United States. In 2010, Structures entered into a contract to design and construct two (2) buildings in Edgewater, New Jersey for a development company known as National Resources. The contract amount exceeded $3.3 million.

In late September 2011, at Corsair's request, the Court issued a Writ of Execution (the "Writ") that was promptly served on National Resources. The Writ commanded National Resources to pay to the marshal any money that was due and owing to Structures. Rather than

obey the clear commandment of the Writ, National Resources chose to disregard the Writ and thereafter paid to Structures, either directly or indirectly on its behalf, more than $2.3 million. Corsair now seeks an Order from the Court commanding National Resources to turn over those improperly paid funds to the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2010, the United States District Court for the District of Maryland entered judgment in favor of Corsair and against, among others, Structures, in the amount of $4,875,000 (the "Judgment").[1] Corsair promptly began its efforts to collect its Judgment; including engaging in discovery in aid of enforcement and entering the Judgment in other jurisdictions in which Corsair believed Structures may have assets or be engaged in business activities.

During discovery in aid of enforcement, Corsair learned that Structures was performing design and construction services for a multi-story residential development project underway in Edgewater, New Jersey (the "Edgewater Project"). Structural drawings prepared by Structures and submitted for approval to the Borough of Edgewater in September 2010 revealed that Structures' client was "National Resources."[2]

At or about the time Structures was preparing the structural drawings, it also prepared a bid for portions of the design and construction work associated with the Edgewater Project.[3] The bid was submitted to "National RE/Sources" and directed to the attention of Dan Burton, who was identified as the "Director of Construction." (Ex. C at 1.) The bid price, which included

---

[1] A true and correct copy of the Order entering judgment is attached hereto as **Exhibit A** and incorporated herein by reference.
[2] A true and correct copy of the relevant portion of the structural drawings is attached hereto as **Exhibit B** and incorporated herein by reference.
[3] A true and correct copy of Structures' August 11, 2010 bid is attached hereto as **Exhibit C** and incorporated herein by reference.

2

design and construction services for buildings C1 and D1, totaled $3,343.050. (*Id.*) The last page of the bid reveals that it was "Accepted" by Dan Burton on behalf of "National RE/Sources". (*Id.* at 7.)

National Resources accepted Structures' bid and, on November 18, 2010, entered into a Contract with Structures to perform the design and construction work on buildings C1 and D1 for the Edgewater Project.[4] The Contract identifies National Resources as the "Owner" of the Edgewater Project, identifies a shell corporation, known as One Main Street Edgewater, as the "Contractor", and identifies Structures as the "Subcontractor." (Ex. D at 1.) The Contract sum was $3,353,050. (*Id.* at 10.)

Structures thereafter submitted invoices directly to National Resources for goods and services it was providing to the Edgewater Project.[5] Structures began receiving payments from National Resources on or about December 20, 2010.[6] The payments continued until a final payment, made directly to one of Structures' suppliers, was made on June 25, 2012. (Ex. F at 6.)

On or about September 27, 2011, while Structures was performing work on the Edgewater Project, Corsair caused the Judgment to be entered in this Court. Almost immediately upon entry, Corsair requested the Court to issue a Writ of Execution to be served on several businesses that were all operating from 485 West Putnam Avenue, Greenwich, Connecticut. The reason for this was three-fold: (i) the application form provided by the Court does not provide any space for identifying a particular entity to be served; (ii) Corsair had reason to believe that

---

[4] A true and correct copy of the Contract is attached hereto as **Exhibit D** and incorporated herein by reference.
[5] True and correct copies of several Application and Certificate of Payment documents submitted by Structures to National Resources are attached hereto as **Exhibit E** and incorporated herein by reference.
[6] A true and correct copy of Transactions by Account ledger created by National Resources to track payments to its vendors on the Edgewater Project is attached hereto as **Exhibit F** and incorporated herein by reference.

3

multiple entities, all operating under National Resources' umbrella, were conducting business from this location; and (iii) the structural drawings, contract documents, applications for payment, and other matters of public record created considerable confusion regarding precisely which entity was responsible for making payments to Structures for its work on the Edgewater Project.[7]

Discovery in aid of enforcement revealed that Joseph Cotter and Lynn Ward jointly own all of the following entities; National Resources, National RE/Sources Investments, LLC, One Main Street Edgewater, LLC, iPark Edgewater, LLC, iPark, LLC, Hudson View Associates, LLC, and Westchester Industries. (Ex. G at 15-16, 33-34.) All of these entities operate from 485 W. Putnam Avenue, Greenwich, Ct. (*Id.* at 19.) All of these entities use Daniel Pennessi, Esquire as their "in-house" counsel. (Id. at 35.) Mr. Cotter testified that he had no explanation for why National Resources was identified in the Contract as the "Owner" and why One Main Street Edgewater was listed as the "Contractor." (*Id.* at 20-21, 30-32.) In truth, according to Mr. Cotter, National Resources does not conduct business anymore, the "Owner" should have been the One Main Street Edgewater entity and the "Contractor" should be have been the Westchester Industries entity. (*Id.*)

Documents produced by National Resources in response to Corsair's discovery in aid of enforcement also revealed an unsigned letter sent by "IPark Edgewater LLC" to one of

---

[7] At least two (2) sub-subcontractors to Structures on the Edgewater Project, Herbert J. Hinchman & Sons, Inc. ("Hinchman") and Joel Tanis & Sons, Inc. ("Tanis"), filed papers in the Superior Court of New Jersey for the County of Bergen seeking to create a mechanic's lien on the underlying property. In the pleadings and papers filed by Hinchman and Tanis, the "owner" was identified as "I Park Edgewater, LLC". iPark Edgewater, LLC is another entity that falls under the National Resources umbrella. *See* Testimony of Joseph Cotter, co-owner of National Resources, at 21-22. A copy of the relevant portions of Mr. Cotter's deposition transcript from his deposition taken on September 21, 2012 is attached hereto as **Exhibit G** and incorporated herein by reference.

4

Structures' sub-subcontractors, Marjam Supply Company ("Marjam"), in which IPark Edgewater identifies itself as the "owner" of the Edgewater Project and agrees to pay Marjam for its outstanding invoices relating to Marjam's work on the Edgewater Project.[8]

Further confusing the issue of which entity within National Resources' umbrella was responsible for paying Structures is that the vast majority of the payments that went directly to Structures were wire transfers from an account in the name of Hudson View Associates. Hudson View Associates is another entity owned entirely by Joseph Cotter and his business partner, Lynn Ward. (Ex. G at 33-34.) Mr. Cotter indicated that Hudson View Associates owns a building in Yonkers, New York, and it does not have any other business purpose. (*Id.* at 39.)

To be clear, all of the entities owned by Mr. Cotter and Ms. Ward – National Resources, iPark Edgewater, iPark, One Main Street Edgewater, Westchester Industries and Hudson View Associates – operate from the first floor office space at 485 W. Putnam Avenue, Greenwich, Connecticut, because Mr. Cotter and Ms. Ward also own that building. (Ex. G at 16-19.)

The Writ specifically and unambiguously commanded the following:

> **PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS NOT A NATURAL PERSON** – Pursuant to Conn. Gen. Stat. § 52-356a, you are <u>required</u> to deliver to the marshal, property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, <u>payment shall be made to the marshal</u> when the debt becomes due within four months after the date of issuance of this execution.[9]

The Writ was served by the marshal on September 29, 2011 and Daniel Pennessi, Esquire, who serves as counsel to National Resources and all of the companies under that National Resources'

---

[8] A true and correct copy of IPark Edgewater's January 13, 2011 letter to Marjam is attached hereto as **Exhibit H** and incorporated herein by reference.

[9] A true and correct copy of the Writ is attached hereto as **Exhibit I** and incorporated herein by reference.

umbrella, including iPark Edgewater and One Main Street Edgewater, was primarily responsible for insuring compliance with the Writ's commandment.[10] Mr. Pennessi admitted in his deposition that while he is employed by yet another Cotter/Ward entity known as Pembroke Management, his business card instead carries the name "National Resources." (Ex. J at 13.)

National Resources thereafter ignored the commandment of the Writ—which, again, required all monies be paid to the marshal—and instead continued to pay all monies due to Structures either directly to Structures or, at Structures' direction, to Structures' sub-subcontractors and suppliers. (*See* Ex. F.) Prior to service of the Writ, payments made to Structures typically were wired directly to an account in the name of Structures.[11] Tellingly, after service of the Writ, National Resources began wiring the money to an entity known as "EFS Global". Structures and EFS Global are both controlled by the same individual, Judgment Debtor John Hildreth. When asked why the wire transfers were switched to EFS Global after receipt of the Writ, National Resources bookkeeper, Daniel Schuyler, indicated that he did so because, "I was instructed by [Judgment Debtor] John Hildreth to wire the funds into this account."[12] Mr. Schuyler further testified that:

> Q. Did he [John Hildreth] tell you specifically that even though the money was being wired to EFS Global, it would still be used to pay the debts and obligations of EFS Structures?
>
> A. That was the understanding, yes.

---

[10] Deposition of Daniel J. Pennessi at 30. A true and correct copy of the relevant portions of the transcript from Mr. Pennessi's November 16, 2012 deposition is attached hereto as **Exhibit J** and incorporated herein by reference.

[11] Wire transfers to Structures are reflected on a document and attachments produced by National Resources titled, "All Payments Issued for EFS Structures, Inc." A true and correct copy of the document is attached hereto as **Exhibit K** and incorporated herein by reference.

[12] Deposition of Daniel Schuyler at 47. A true and correct copy of the relevant portions of the transcript from Mr. Schuyler's November 16, 2012 deposition is attached hereto as **Exhibit L** and incorporated herein by reference.

(Ex. L at 49-50.)

In an attempt to insulate itself from liability arising from its willful disregard of the Writ, National Resources also took the extraordinary step of insisting upon, and ultimately receiving, a full indemnification from John Hildreth and Structures. Mr. Pennessi admitted that the indemnification was "meant to protect the entities to the extent Corsair pursued or any costs or any fees were incurred by any of the entities that we operate in connection with that action." (Ex. J at 63.) To further clarify, Mr. Pennessi testified as follows:

> Q.   Okay. Is the indemnity set up so that at the end of this process [if] one or more of the entities that you work with has to pay Corsair, you will stand on that indemnification and go seek that money from John Hildreth and EFS Structures?
>
> A.   I don't know what we will do.
>
> Q.   I'm just asking you: Is that how it's set up?
>
> A.   I believe so.

(Ex. J. at 64.)

Beginning on October 3, 2011 and continuing until June 25, 2012, National Resources paid Structures a total of $2,308,504. (Ex. F.) Of this amount, $681,196.22 was wired to Structures, and the other $1,627,307.80 was wired or paid by check to Structures' creditors and sub-subcontractors on the Edgewater Project, at Structures' direction and on Structures' behalf. Pursuant to the Writ, all of these monies should have been turned over to the marshal and should thereafter have been available to Corsair to partially satisfy its judgment.

## ARGUMENT

### A. Corsair Is Entitled To Receive All Monies National Resources Paid To Structures And Structures' Creditors/Suppliers After The Date National Resources Was Served With The Writ.

At the time National Resources was served with the Writ, it was indebted to Structures for several million dollars that were either due at the time the Writ was served or became due and payable within four (4) months thereafter. All of these monies were subject to the Writ and, by law, should have been turned over by National Resources to the marshal. Accordingly, Corsair is entitled to a turnover order from this Court directing National Resources to remit to the Court $2,308,504.

Post-judgment garnishments under Connecticut law are governed by Section 52-329 *et seq.* of Connecticut General Statutes. Specifically, Section 52-356a permits execution against certain nonexempt personal property and sets forth precisely how the process is to be followed. In relevant part, the law provides as follows:

> The property execution shall notify any person served therewith that the judgment debtor's nonexempt personal property is subject to levy, seizure and sale by the levying officer pursuant to the execution and, if the judgment debtor is a natural person, shall be accompanied by a notice of judgment debtor rights as prescribed by section 52-361b and a notice to any third person of the manner, as prescribed by subdivision (4) of this subsection, for complying with the execution.

Conn. Gen. Stat. § 52-356a(a)(2)(2009). The statute further provides:

> With respect to a judgment debtor who is not a natural person, if such personal property, including any debt owed, is in the possession of a third person, the levying officer shall serve that person with a copy of the execution and that person <u>shall forthwith deliver</u> the property or pay the amount of the debt due or payable to the levying officer, provided, if the debt is not yet payable, payment <u>shall be made</u> when the debt matures if within four months after issuance of the execution[.]

(*Id.* at (a)(4)(B)(emphasis supplied).

The Supreme Court of Connecticut has recognized that "[a] writ of garnishment subjects to the claims of a creditor only a debt which, at the time of garnishment, was due to the underlying debtor." *F&W Welding Serv., Inc. v. ADL Contracting, Inc.* 217 Conn. 507, 515, 587 A.2d 92, 96 (Sup. Ct. Conn. 1991). The word "due" has been liberally construed "to mean 'owing' rather than presently payable." *Id.* at 515, 587 A.2d at 97.

> A debt is owing and thus available for garnishment if the garnishee has an existing obligation to pay the debtor either in the present or the future. An obligation to pay the debtor in the future is "existing" if the garnishee's liability to pay the obligation is certain. If an obligation is certain as to liability, it is not rendered uncertain merely because the debt is unliquidated, that is, the amount that the garnishee ultimately will be obligated to pay is presently uncertain. Furthermore, the garnishee's otherwise certain liability is not made uncertain because the obligation may be diminished or defeated by a condition subsequent.

(*Id.* at 515-16, 587 A.2d at 97)(citations omitted).

The Writ issued by the Court follows the letter of Connecticut law, specifically advising National Resources that it was "required to . . . pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal when the debt becomes due within four months after the date of issuance of this execution." Ex. I at 4. The Writ was served on National Resources on September 29, 2011.

At the time the Writ was served on National Resources and continuing for the period of three (3) months thereafter, Structures was providing design assistance and construction services to the Edgewater Project pursuant to the Contract. Based upon National Resources' payment records, Structures' completed its work and received its final payment on December 29, 2011. Logically, the work performed and materials provided by Structures' sub-subcontractors and suppliers also would have been completed at that time, with the payments following thereafter.

9

In that regard, all of the amounts paid by National Resources beginning on October 3, 2011 and continuing until June 25, 2012 either already were due when the Writ was served on National Resources or became due and payable within four (4) months thereafter.  Accordingly, all of these payments should have been tendered to the marshal pursuant to the Writ.  National Resources willfully violated the Writ by failing and refusing to abide by its command and failing to pay over to the marshal amounts due to Structures.

    For these reasons, Corsair respectfully requests the Court enter an Order for Turnover commanding National Resources, National RE/Sources Investments, LLC, iPark Edgewater, LLC, iPark, LLC, Westchester Industries, One Main Street Edgewater, LLC, and Hudson View Associates to turnover to the Court $2,308,504, which shall thereafter be remitted to Corsair in partial satisfaction of its judgment against Structures.

    CORSAIR SPECIAL SITUATIONS FUND, L.P.

By: _____
Gregory J. Spaun, Esq. (ct28915)
Welby, Brady & Greenblatt, LLP
One Landmark Square, 5th Floor
Stamford, Connecticut  06901
(203) 363-0081

## CERTIFICATION

This is to certify that a copy of the foregoing was electronically transmitted, this 17th day of January, 2013, to the following:

        Daniel J. Pennessi, Esq.
        National Resources
        National Re/Sources Investments LLC
        iPark Edgewater, LLC
        iPark, LLC
        485 West Putnam Avenue
        Greenwich, CT  06830
        dpennessi@nationalresources.com

        *Attorney for National Resources, National Re/Sources Investments LLC, iPark Edgewater, LLC and iPark, LLC*

        Adam C. Harrison, Esquire
        Matthew R. Gerrish, Esquire
        Harrison Law Group
        40 West Chesapeake Avenue, Suite 600
        Towson, Maryland  21204-4891
        aharrison@harrisonlawgroup.com

        *Attorneys for Judgment Debtors Engineered Framing Systems, Inc., John J. Hildreth and Marie N. Hildreth*

        _____
        Gregory J. Spaun