# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CORSAIR SPECIAL SITUATIONS FUND, L.P., :
                                :
              Plaintiff,         :       Case No. 3:11cv1980 (JCH)
                                :
v.                              :
                                :
ENGINEERED FRAMING SYSTEMS, INC.,   :
JOHN J. HILDRETH, MARIE N. HILDRETH,  :
And EFS STRUCTURES, INC.,         :
                                :
              Defendants.    :       FEBRUARY 28, 2013

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR TURNOVER ORDER

Andrew M. Zeitlin (ct21386)
Diane C. Polletta (ct27863)
Shipman & Goodwin LLP
300 Atlantic Street, Third Floor
Stamford, CT  06901-3522
Tel. (203) 324-8100
Fax (203) 324-8199
azeitlin@goodwin.com
dpolletta@goodwin.com

*Counsel For Third Parties National Resources, National Re/Sources Investments LLC, iPark Edgewater, LLC, i.Park, LLC, Hudson View Associates, LLC, Westchester Industries, and One Main Street Edgewater, LLC*

**ORAL ARGUMENT REQUESTED**

## Table of Contents

Preliminary Statement ................................................................ 1

Factual and Procedural Background ............................................. 4

    A.  The Incorporation of EFS-Condon ............................................ 4

    B.  The Underlying Litigation Between Corsair
        and EFS-Condon ................................................................ 5

    C.  The Revocation of EFS-Condon's Corporate Status .................... 7

    D.  The Incorporation of a New, Separate Entity
        Named EFS Structures, Inc. ("EFS-Hildreth") ........................... 7

    E.  The Contract Between One Main Street and EFS-Hildreth ........... 8

    F.  The Dispute Between EFS-Condon and EFS-Hildreth ................. 9

    G.  The Registration of the Judgment in the
        Maryland Action in the District of Connecticut .......................... 11

    H.  The Improper and Insufficient Service of the
        Writ of Execution ............................................................... 11

    I.  Payments of EFS-Hildreth and its Subcontractors ..................... 13

    J.  Citizenship of One Main Street ............................................. 13

    K.  Citizenship of Corsair ......................................................... 13

ARGUMENT ........................................................................... 14

Point I    Corsair Did Not Properly Serve One Main Street
           With the Writ of Execution .............................................. 14

    A.  One Main Street Was Never Served with A
        Writ of Execution ............................................................... 14

    B.  Corsair Did Not Comply with Any of the Statutory
        Methods of Service in Conn. Gen. Stat. § 52-350e ..................... 19

**Point II**  **None of the Third Parties Owed a Debt to EFS-Condon, The Judgment Debtor Herein, and Corsair Has Not Obtained a Judgment Against EFS-Hildreth** ……………………………………………22

  **A. Corsair Has Not Sought to Substitute or Add EFS-Hildreth as a Party to the Maryland Action**………………………24

  **B. Rule 69 Procedures Do Not Permit Adjudication of Judgment Against EFS-Hildreth**…………………………………25

**CONCLUSION**……………………………………………………………30

## Table of Authorities

**Cases:**                                                                    **Page(s)**

Austen v. Catterton Partners V, LP, 729 F. Supp. 2d 548 (D. Conn. 2010) .................... 21

Berman v. Gurwitz, 458 A.2d 1311 (N.J. Super. Ct. Ch. Div. 1981) ........................... 23

Berry v. McLemore, 795 F.2d 452 (5th Cir. 1986) .................................................. 25

Bridgeport Water Pollution Control Auth. v. Prof'l Servs. Grp.,
    No. 399294, 2004 WL 1925833 (Conn. Super. Ct. July 26, 2004) ...................... 22

Carden v. Arkoma Assocs., 494 U.S. 185 (1990) .................................................. 28

Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.,
    20 F.2d 295 (2d Cir.1927) ................................................................... 26

Epperson v. Entm't Express, Inc., 242 F.3d 100 (2d Cir. 2001) .......................... 26, 27

Gen. Motors Acceptance Corp. v. Pumphrey, 535 A.2d 396 (Conn. App. Ct. 1988) .......... 14

Greenwood v. Thomas, CV030825933S, 2004 WL 1245501
    (Conn. Super. Ct. May 17, 2004) ............................................................. 19

Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48 (2d Cir. 2000) ................ 29

H.C. Cook Co. v. Beecher, 172 F. 166 (D. Conn. 1909) ..................................... 26, 27

K&J Clayton Holding Corp. v. Keuffel & Esser Co., 272 A.2d 565
    (N.J. Super. Ct. Ch. Div. 1971) ............................................................. 23

Lussier v. Dep't of Transp., 636 A.2d 808 (Conn. 1994) ...................................... 18

Mahon v. Moorman, CV 950329017, 1997 WL 120393
    (Conn. Super. Ct. Feb. 28, 1997) ........................................................... 16

Monti v. Wenkert, 947 A.2d 261 (Conn. 2008) ............................................... 18, 19

Nardella v. Norwich Inn & Spa, No. CV 990421516, 1999 WL 773574,
    (Conn. Super. Ct. Sept. 17, 1999) ........................................................... 17

Nat'l Westminster Bank U.S.A. v. Cheng, 751 F. Supp. 1158 (S.D.N.Y. 1990) ..... 25, 26, 28

*Nykcool A.B. v. Pac. Fruit Inc.*, 10 CIV 38867 (LAK)(AJP),
2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) ........................................... 27, 28

*Pack v. Burns*, 562 A.2d 24 (Conn. 1989) .............................................. 18

*Pasquariello Elec. Corp. v. Nyberg*, CV085024983, 2009 WL 3739445
(Conn. Super. Ct. Oct. 7, 2009) ................................................... 21

*RBC Bearings, Inc. v. Thin Section Bearings, Inc.*, No. 3:05CV00360,
2007 WL 2727160 (D. Conn. Sept. 18, 2007) ................................... 27

*Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212 (10th Cir. 1992) ............... 25

*Sav Bank of Manchester v. Lane*, 690 A.2d 462 (Conn. Super. Ct. 1996) .............. 17

*Shedrick v. Shedrick*, 627 A.2d 1387 (1993) .......................................... 17

*Software Freedom Conservancy, Inc. v. Best Buy Co., Inc.*, 783 F. Supp.2d 648
(S.D.N.Y. 2011) .................................................................. 24

*Squeez-A-Purse Corp. v. Stiller*, 31 F.R.D. 261 (S.D.N.Y. 1962) ................... 26

*State v. Lamar Adver. of Hartford*, CV085020325S, 2011 WL 1566981
(Conn. Super. Ct. Apr. 5, 2011) .................................................. 19

*Washington v. Tracey*, CV105034700S, 2011 WL 3891343
(Conn. Super. Ct. Aug. 3, 2011) ................................................. 19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) .............. 28

## Statutes:

Conn. Gen. Stat. § 33-929 ............................................................ 28

Conn. Gen. Stat. § 34-225 ............................................................ 21

Conn. Gen. Stat. § 52-59b ............................................................ 21

Conn. Gen. Stat. § 52-123 ............................................................ 18

Conn. Gen. Stat. § 52-350e ................................................... 15, 16, 19, 20

Conn. Gen. Stat. § 52-351a ........................................................... 20

Conn. Gen. Stat. § 52-351b ....................................................................................20

Conn. Gen. Stat. § 52-356a ..............................................................................15, 20

Conn. Gen. Stat. § 52-356b ....................................................................................20

Conn. Gen. Stat. § 52-356c ..............................................................................24, 25

Conn. Gen. Stat. § 52-361a ....................................................................................21

Fed. R. Civ. P. 25(c) ..............................................................................................24

Fed. R. Civ. P. 69 ......................................................................................15, 25, 26

**Secondary Sources:**

1 E. Stephenson, Conn. Civil Procedure (2d Ed.1970) § 105e, p. 433 ...........................18

5 Bus. & Com. Litig. Fed. Cts. § 57:12 (3d ed. 2012) ........................................24, 25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CORSAIR SPECIAL SITUATIONS FUND, L.P., | : | |
| | : | |
| Plaintiff, | : | Case No. 3:11cv1980 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ENGINEERED FRAMING SYSTEMS, INC., | : | |
| JOHN J. HILDRETH, MARIE N. HILDRETH, | : | |
| And EFS STRUCTURES, INC., | : | |
| | : | |
| Defendants. | : | FEBRUARY 28, 2013 |

MEMORANDUM OF LAW IN OPPOSITION
TO MOTION FOR TURNOVER ORDER

Preliminary Statement

Corsair Special Situations Fund, L.P. ("Corsair") has initiated this

proceeding by writ of execution in order to enforce a judgment it obtained against

judgment debtor EFS Structures, Inc., an entity owned by Robert Condon that was

incorporated in New Jersey at the time of the judgment ("EFS-Condon"). Through its

Motion for Turnover Order (the "Motion"), Corsair asks that third parties National

Resources; National RE/Sources Investments, LLC; iPark Edgewater, LLC; iPark,

LLC; Westchester Industries; One Main Street Edgewater, LLC; and Hudson View

**ORAL ARGUMENT REQUESTED**

Associates, LLC (collectively, the "Third Parties"), [1] turn over to the Court and remit to Corsair monies in partial satisfaction of Corsair's judgment against EFS-Condon. Corsair, however, has neglected at least two core procedural prerequisites to execution on its judgment.  As such, its Motion for Turnover Order should be denied and its writ of execution dismissed.

First, Corsair never served the writ of execution on One Main Street Edgewater, LLC ("One Main Street"), which is the one entity that is party to the contract (the "Contract") with the entity Corsair alleges to be subject to its judgment. Corsair purported to serve the writ of execution on only four of the Third Parties -- National Resources; National Re/Sources Investments, LLC ("National Re/Sources Investments"); iPark Edgewater, LLC ("i.Park Edgewater"); and i.Park, LLC ("iPark").  While Corsair attempts to obfuscate that issue in its Motion, there is an express statutory procedure for service of process in postjudgment proceedings such as this.  By statute, only the entities actually, and properly, served with a writ of execution are subject to such writ.  Service on certain of the Third Parties -- completely separate

---

[1] The Third Parties are identified here as they are described in Corsair's Motion for Turnover Order.  Corsair has misnamed or misidentified certain of the Third Parties. As discussed in more detail below, a limited liability company by the name of National Re/Sources Investments, LLC had been registered as a Delaware LLC in 2001.  In April 2003 it changed its name to I.Park Windham, LLC, and its LLC status was forfeited in April 2004.  A limited liability company by the name of National Re/Sources, LLC had been registered as a Delaware LLC until its status was cancelled on May 21, 2010.  Its corporate status was re-formed on February 20, 2012.  A limited liability company by the name of i.Park Edgewater LLC is registered as a Delaware LLC.  A limited liability company by the name of iPark, LLC is also registered as a Delaware LLC, as is One Main Street Edgewater LLC.  Westchester Industries, Inc. is a New York corporation. Hudson View Associates, LLC is a Connecticut limited liability company.

entities from One Main Street -- cannot substitute for actual service on One Main Street. Indeed, the manner of service Corsair made here -- in hand service on an individual in her capacity as member of certain of the Third Parties -- was plainly insufficient as to One Main Street, a Delaware limited liability company that is subject to service under the rules governing service on foreign limited liability companies.

Moreover, Corsair seeks here to impose obligations on One Main Street (and all of the Third Parties) without ever having obtained a judgment against the entity with whom One Main Street (or any of the Third Parties) contracted and to whom One Main Street arguably owed monies. That judgment is a necessary prerequisite to any execution against the Third Parties. This Court does not have the authority to now impose such judgment, or to impose obligations on the Third Parties in the absence of such judgment.

As discussed below and in the accompanying affidavit of Daniel Pennessi, sworn to February 28, 2013 ("Pennessi Aff."), a complicated factual history underlies Corsair's pursuit of the Third Parties. The judgment debtor herein is EFS-Condon, whose corporate existence ceased prior to the execution of the contract Corsair has cited as the basis for its recovery against the Third Parties. A separate entity, owned by John Hildreth, also named EFS Structures, Inc. ("EFS-Hildreth"), is party to that contract. Corsair's argument appears to be that EFS-Hildreth is nonetheless liable for the debts of EFS-Condon on a theory of successor liability. Corsair, however, has never litigated that issue, nor has it sought to substitute or add EFS-Hildreth as a party to the underlying

3

judgment, as it is required to do before a judgment can be enforced against EFS-Hildreth.

The issue of successor liability or application of the underlying judgment to EFS-Hildreth is not properly before this Court.   Indeed, while the factual underpinnings of Corsair's claims are unquestionably complicated, the procedural path Corsair is required to follow, yet has not followed, is straightforward.  Corsair must first add EFS-Hildreth as a party to the underlying action and seek to amend the judgment to include EFS-Hildreth, or bring a separate action in a forum in which personal and subject matter jurisdiction are present and obtain judgment against EFS-Hildreth.  Absent such procedural steps, Corsair's effort to recover from the Third Parties is premature and inappropriate.

Accordingly, the Third Parties respectfully request that the writ of execution be dismissed and Corsair's Motion denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Incorporation of EFS-Condon

EFS-Condon was incorporated in New Jersey on April 26, 2006, and was issued a corporate identification number of 0100962056.  The Certificate of Incorporation of EFS-Condon identifies the name of the corporation as "EFS Structures, Inc.," and identifies John Condon, of 725 River Road, Suite 32-305, Edgewater, New Jersey, as the sole director.  (See Pennessi Aff. at ¶ 6, and Exhibits A and B thereto.) The 2007 Annual Report for EFS-Condon (the only Annual Report on file with the State of New Jersey) identifies Robert Condon as the President, Secretary, and Treasurer of

4

EFS-Condon.  (Pennessi Aff. at ¶ 7, and Exhibit C thereto.)  Additional corporate documents for EFS-Condon identify Robert Condon as the sole shareholder, as the sole director, and as the President, Vice President, Secretary, and Treasurer of EFS-Condon. (Pennessi Aff. at ¶ 7, and Exhibit D thereto.)

Between April 26, 2006 and November 16, 2010 (when its incorporation status was revoked), EFS-Condon was the sole corporation with the name "EFS Structures, Inc." existing in the State of New Jersey.

**B.      The Underlying Litigation Between Corsair and EFS-Condon**

On May 8, 2009, Corsair commenced an action in the District of Maryland against the entity it labeled "EFS Structures, Inc." along with several other defendants, including Engineered Framing Systems, Inc. ("Engineered"), John Hildreth ("Hildreth"), and Marie Hildreth, for breach of a Settlement Agreement (the "Maryland Action").  (Pennessi Aff. at ¶ 9, and Exhibit E thereto).  The Complaint therein identified defendant EFS Structures, Inc. as "a New Jersey corporation with its principal place of business located in Linthicum, Maryland."  (Exhibit E at ¶ 5).  At the time the Maryland Action was commenced, only one entity named EFS Structures, Inc. was incorporated in New Jersey -- EFS-Condon.

On June 9, 2010, United States Magistrate Judge Paul Grimm entered summary judgment against all named defendants in the Maryland Action, awarding Corsair $4,875,000.00, with interest.  (Pennessi Aff. at ¶ 10, and Exhibit F thereto.)  At the time summary judgment was entered, EFS-Condon was the sole entity named EFS Structures, Inc. incorporated in New Jersey.

EFS-Condon and the other defendants subsequently appealed the judgment to the Fourth Circuit, which affirmed the lower court's judgment on August 5, 2011. (Pennessi Aff. at ¶ 11, and Exhibits G and H thereto.)  On August 11, 2011, Judge Grimm entered a Revised Order of Judgment ("Revised Order") *nunc pro tunc* to June 9, 2010, the date of the original order.  (Pennessi Aff. at ¶ 11, and Exhibit I thereto.)  The Revised Order did not alter the substance of the original Order, and clarified that the judgment was entered against all defendants, jointly and severally, in the total amount of $5,443,171.33, including pre-judgment interest.  (Id.)

Around the time of entry of the Revised Order, Corsair, as judgment creditor, moved to compel the deposition of Robert Condon.  In its motion, Corsair noted that according to the information it had obtained, "Robert Condon ('Mr. Condon') is the sole officer of Judgment Debtor EFS Structures, Inc."  (Pennessi Aff. at ¶ 12, and Exhibit J thereto.)  By Letter Order dated August 10, 2011, Judge Grimm granted Corsair's motion to compel, specifically stating that "Robert Condon, on behalf of EFS Structures, Inc., *a Judgment Debtor that Mr. Condon solely owns*, is hereby ORDERED to appear for a deposition. . . ." (emphasis added) (Pennessi Aff. at ¶ 12, and Exhibit K thereto.)

The record of the Maryland Action thus makes clear that EFS-Condon, the sole entity bearing the name "EFS Structures, Inc." incorporated in New Jersey at the time of the Judgment, is the judgment debtor therein.

C.    **The Revocation of EFS-Condon's Corporate Status**

       On November 16, 2010, the State of New Jersey revoked the incorporation status of EFS-Condon for failure to file annual reports for two or more consecutive years. (Pennessi Aff. at ¶ 14, and Exhibit L thereto.) EFS-Condon's corporate existence thereby ceased as of November 16, 2010. A review of the filings with the State of New Jersey Department of Treasury reveals that EFS-Condon never filed for reinstatement with the State of New Jersey.

D.    **The Incorporation of a New, Separate Entity Named EFS Structures, Inc. ("EFS-Hildreth")**

       On January 31, 2011, a separate entity, also named "EFS Structures, Inc." ("EFS-Hildreth") filed its certificate of incorporation with the State of New Jersey, and was assigned identification number 0400394692. (Pennessi Aff. at ¶ 15, and Exhibit M thereto) On the Certificate of Incorporation, John Hildreth ("Hildreth") is identified as the sole member of the First Board of Directors. (Id.) Documents provided by EFS-Hildreth indicate that Hildreth is also sole shareholder of EFS-Hildreth, and the sole officer, serving as President, Vice President, Secretary, and Treasurer. (Pennessi Aff. at ¶ 15, and Exhibit N thereto). With its own separate incorporation in the State of New Jersey, distinct corporate identification number, and different ownership, EFS-Hildreth established itself as a separate legal entity from EFS-Condon.[2]

---

    [2] According to EFS-Hildreth, it has a Federal Employer Identification Number that is different than EFS-Condon's. EFS-Hildreth has represented to One Main Street that Federal Employer Identification Number 20-474223 was used by EFS-Condon, whereas as separate Federal Employer Identification Number, 20-5219221, came to be used by EFS-Hildreth upon its incorporation in January 2011. (Pennessi Aff. at ¶ 15, n. 2.)

**E.      The Contract Between One Main Street and EFS-Hildreth**

On November 18, 2010, One Main Street, as contractor, entered into a construction contract (the "Contract") with EFS-Hildreth, as subcontractor working as structural engineer, on the construction of two multifamily residential buildings in Edgewater, New Jersey. (Pennessi Aff. at ¶ 16, and Exhibit O thereto). The Contract, an American Institute of Architects ("AIA") "Standard Form Of Agreement Between Contractor and Subcontractor," identifies the Contractor as "One Main Street, Edgewater, 45 River Road, Edgewater, NJ 07020," and the Subcontractor as "EFS Structures, 780 Elkridge Landing Road, Suite 101, Linthicum, MD, 21090." (Exhibit O at p. 1). The Contract is signed by "John J. Hildreth" on behalf of "EFS Structures, Inc.," as Subcontractor.

At the time the Contract was entered into, EFS-Condon's legal existence had terminated. While EFS-Hildreth had not yet formally incorporated in the State of New Jersey, EFS-Hildreth subsequently ratified the Contract through its performance under the Contract.

Pursuant to the Contract, EFS-Hildreth agreed to provide certain labor, materials, equipment, and services in connection with the construction of the buildings, and One Main Street agreed to pay EFS-Hildreth the sum of $3,353,050.00, subject to certain additions and deductions. (Exhibit O at §10.1; Art. 8; Exh. A). Under the Contract, One Main Street, as Contractor, was the entity responsible for all payments to EFS-Hildreth. (Exhibit O at § 10.1) ("The Contractor shall pay the Subcontractor in

8

current funds for performance of the Subcontract the Subcontract Sum of $3,353,050.00 subject to additions and deductions as provided in the Subcontract Documents.")

**F.     The Dispute Between EFS-Condon and EFS-Hildreth**

In or about January 2011, One Main Street found itself in the middle of a dispute between EFS-Condon and EFS-Hildreth.  Robert Condon, the owner of EFS-Condon, contacted Dan Burton, who is a director of development for Westchester Industries, and asserted that John Hildreth had no authority to enter into a contract on behalf of EFS Structures, Inc.  (Pennessi Aff. at ¶ 19.)  One Main Street thereafter sought in good faith to determine which entity was party to the Contract, and who -- Condon or Hildreth -- had authority to act on behalf of that entity under the Contract. (Id.)

In January 2011, at the request of Dan Burton and Joe Cotter, President of One Main Street, Condon provided documentation identifying himself as the sole shareholder, President, Vice President, Secretary, and Treasurer of EFS-Condon, along with a certified copy of the certificate of incorporation of EFS-Condon in New Jersey and the company's bylaws.  (Pennessi Aff. at ¶ 20, and Exhibit D thereto).  On January 26, 2011, Condon requested "that any funds, credits, or payments due for EFS Structures Inc. be withheld until further notice."  He also requested his "prior authorization for any expenses that will be encumbered by EFS Structures, Inc.," and stated that he "will maintain sole authorization of any receivership of disbursements, payment, and expenses pertaining to EFS Structures, Inc."  (Pennessi Aff. at ¶ 20, and Exhibit P thereto.)

9

EFS-Hildreth vehemently disputed that EFS-Condon had any involvement with, or authority over, the Contract. (Pennessi Aff. at ¶ 21.) On February 7, 2011, counsel for EFS-Hildreth provided documentation to Dan Burton demonstrating that the State of New Jersey had revoked EFS-Condon's incorporation status prior to the execution of the Contract, and that EFS-Hildreth was incorporated in New Jersey on January 31, 2011. (Id., and Exhibits Q and R thereto.)   Counsel for EFS-Hildreth further explained that although EFS-Hildreth had not yet incorporated at the time the Contract was executed, it should be recognized as a "company in formation," with a Federal Employer Identification Number and bank accounts, "which ultimately became licensed to do business in the State of New Jersey." (Id., and Exhibit S thereto).

By February 2011, based on the foregoing documentation, One Main Street understood that EFS-Hildreth, not EFS-Condon, was party to the Contract; that John Hildreth was authorized to act on behalf of EFS-Hildreth; and that performance under the Contract could proceed as intended.  (See Pennessi Aff. at ¶ 22.)

At the time One Main Street reached the understanding that EFS-Hildreth was the proper party to the Contract, One Main Street and the other Third Parties had no knowledge, and no basis to suspect, that Corsair would later look to the Third Parties to recover its judgment against EFS-Condon.  Throughout that time period, Corsair's judgment against EFS-Condon remained on appeal.  The judgment had not yet been registered in the District of Connecticut, and no writ of execution against the Third Parties had issued.

**G.     The Registration of the Judgment in the
        Maryland Action in the District of Connecticut**

On September 27, 2011, Corsair registered the Judgment in the Maryland

Action with this Court.   Thereafter, Corsair applied for a writ of execution on property,

identifying the judgment debtors in the Maryland action.  The writ of execution issued on

September 29, 2011.

**H.     The Improper and Insufficient Service of the Writ of Execution**

Service of the writ of execution was purportedly made on September 30,

2011 by Mark A. Pesiri, State Marshal for Fairfield County, Connecticut, who claims to

have served the writ on certain of the Third Parties -- specifically, National Re/Sources

Investments; iPark; National Resources; and i.Park Edgewater.  (Pennessi Aff. at ¶ 25.)

The Execution of Property signed by Marshal Pesiri states that he "made demand on

third parties NATIONAL RE/SOURCES INVESTMENTS, LLC, I.PARK, LLC,

NATIONAL RESOURCES, AND IPARK EDGEWATER, LLC. by serving a true copy

of the original Application for and Writ of Execution for each entity upon Lynne Ward at

485 West Putnam Avenue, Greenwich, Connecticut who is a member of each entity."

(Id., and Exhibit T thereto).

Two of the companies purportedly served, iPark and i.Park Edgewater are

Delaware limited liability companies.[3]  (Pennessi Aff. at ¶ 26.)  National Re/Sources

Investments and National Resources did not exist as legal entities at the time of service of

_____

[3] As discussed above in Note 1, the entity names are incorrect on the Marshal's
proof of service.

the writ, or at the time the Contract was executed.[4] (Id.)  National Resources, in effect, is the trade name of a cluster of companies, including the above entities. (Id.)

Certain of the Third Parties, including One Main Street, Hudson View Associates, LLC ("Hudson View Associates"), and Westchester Industries, were never served with the writ of execution.  (Id. at ¶ 27.)  Marshal Pesiri did not direct his service of the writ of execution to these entities, and they are not named in the writ of execution. (Id.)

One Main Street is a Delaware limited liability company, authorized to do business in New Jersey.  (Id. at ¶ 28).  Westchester Industries, Inc. is a New York corporation, with its principal place of business in Connecticut. (Id.)  Hudson View Associates is a Connecticut limited liability company. (Id.)  Each of the Third Parties operates, in part, out of an office located at 485 West Putnam Avenue, Greenwich, Connecticut.  (Id.)  That building also houses a private equity firm called Dubin Clark, that is unaffiliated with the Third Parties.  (Id.)

The alleged service of the writ of execution consisted only of Marshal Pesiri's in hand service on Lynne Ward, a member or principal of certain of the entities. (Id. at ¶ 29)  Corsair did not make service by any other means.  None of the Third Parties was served by certified mail, and neither the Connecticut Secretary of State nor any other agent for service of any of the Third Parties was served with the writ.  (Id.)

---

[4] See note 1, supra.

12

I.      **Payments to EFS-Hildreth and its Subcontractors**

        After Corsair issued the writ of execution, counsel for the Third Parties informed counsel for Corsair that the Third Parties did not owe a debt to EFS-Condon, as the Contract was between One Main Street and EFS-Hildreth. (Id. at ¶ 30.)

        After becoming convinced that it did not have any obligation under the writ, One Main Street paid the amounts due under the Contract to EFS-Hildreth its subcontractors (to whom One Main Street independently owed a financial obligation). (Id. at ¶ 31.)

J.      **Citizenship of One Main Street**

        At the time of the purported service of the writ, i.Park Edgewater was a member of One Main Street.  (Id. at ¶ 32.)  The sole member of i.Park Edgewater is i.Park Edgewater Holdings LLC, whose sole member, in turn, is i.Park Edgewater Investments, Inc.  (Id.)  i.Park Edgewater Investments, Inc. is a Delaware corporation with a principal place of business in Greenwich, Connecticut, and is therefore a citizen of both Delaware and Connecticut.  (Id.)

K.      **Citizenship of Corsair**

        Corsair has represented in other court submissions that it is comprised of partners that are citizens and residents of Connecticut, among other jurisdictions. (Pennessi Aff. at ¶ 33, and Exhibit U thereto.)

## ARGUMENT

### POINT I

### CORSAIR DID NOT PROPERLY SERVE
### ONE MAIN STREET WITH THE WRIT OF EXECUTION

Corsair's Motion for Turnover Order obscures the simple fact that none of the Third Parties are properly before this Court.  In short, Corsair not only served the wrong entities, but it also failed to effectuate proper service.  Corsair's ground for serving the writ of execution on the Third Parties is ostensibly that they owed a debt to the Judgment Debtor.  Corsair contends that EFS-Hildreth is a Judgment Debtor, a point the Third Parties dispute, as set forth above and in Point II below.  But despite Corsair's attempt to sow confusion, the fact is that there is only one entity among the Third Parties that had a contractual obligation with, and arguably owed a debt to, EFS-Hildreth.  That entity is One Main Street, the Contractor under the Contract.

**A.**     **One Main Street Was Never Served with a Writ of Execution**

One Main Street was never in fact served with the writ of execution.  (See Pennessi Aff. at ¶¶ 25, 27, and Exhibit T thereto.)  Absent actual service of the writ of execution on it, One Main Street does not have the status of a proper party to this proceeding, and this Court lacks jurisdiction over it.  See Gen. Motors Acceptance Corp. v. Pumphrey, 535 A.2d 396, 398 (Conn. App. Ct. 1988) ("Service of process on a party in accordance with the statutory requirements is a prerequisite to a court's exercise of in personam jurisdiction over that party.")

14

Here, the statutes governing post-judgment executions[5] make clear that

actual service of the writ of execution is a prerequisite to any further compliance.   Conn.

Gen. Stat. Ann. § 52-356a(a)(4)(B) provides, in relevant part:

> With respect to a judgment debtor who is not a natural person, if
> such personal property, including any debt owed, is in the
> possession of a third person, *the levying officer shall serve that
> person with a copy of the execution* and that person shall
> forthwith deliver the property or pay the amount of the debt due
> or payable to the levying officer, provided, if the debt is not yet
> payable, payment shall be made when the debt matures if within
> four months after issuance of the execution.

Conn. Gen. Stat. § 52-356a(a)(4)(B) (emphasis added).  See also Conn. Gen. Stat. Ann.

§ 52-356a(a)(2) ("The property execution shall notify *any person served therewith* that

the judgment debtor's nonexempt personal property is subject to levy, seizure and sale

by the levying officer pursuant to the execution . . . .") (emphasis added).

The statutes governing post-judgment proceedings, moreover, clearly set

forth the authorized methods of service of process.  As set forth in Conn. Gen. Stat. §

52-350e(a):

> (a) Unless otherwise provided by section 52-351a, 52-351b, 52-
> 356a, 52-356b or 52-361a, service of process concerning a
> postjudgment procedure, or concerning a determination of
> interest in property pursuant to section 52-356c, may be made (1)
> by a proper officer sending a true and attested copy thereof by
> certified mail, return receipt requested, to a person at his last-
> known address, or (2) as provided for service of process by
> chapter 896 [Conn. Gen. Stat. 52-45a et seq., dealing with Civil
> Process, Service, and Time for Return] or (3) as provided by rule

---

[5]  Rule 69 of the Federal Rules of Civil Procedure provides for application of
state law for the procedure on execution.  See Fed. R. Civ. P. 69(a)(1) ("The procedure
on execution--and in proceedings supplementary to and in aid of judgment or execution--
must accord with the procedure of the state where the court is located, but a federal
statute governs to the extent it applies.")

> of court for service on an appearing party if made on a party who
> has filed a postjudgment appearance or if made within one
> hundred eighty days of rendition of judgment on a party who has
> appeared in the action.

Conn. Gen. Stat. § 52-350e(a).  One Main Street was not served by any of the above

means, or in any other manner.  Instead, service was attempted on entirely separate

entities, and that service (itself deficient, as discussed below) cannot be attributed to One

Main Street.

   The marshal's proof of service here indicates that Corsair attempted to

serve the wrong parties – National Re/Sources Investments; i.Park Edgewater; iPark,

LLC; and National Resources – none of which had any obligations to the judgment

debtor.  The parties listed on the marshal's proof of service are distinct from One Main

Street Edgewater, and each exists as a separate legal entity or was a former corporate

entity defunct at the time of service of the writ.  National Resources is, in effect, a trade

name used by a group of companies, each of which maintains its own separate corporate

legal existence.[6]  (See Pennessi Aff. at ¶ 26.)  Any such service on those other entities

was plainly insufficient as to One Main Street.

   First, in light of the statutory mandate for actual service of the writ of

execution, and the clearly delineated statutory methods of service, there is no room for

Corsair to confer jurisdiction over One Main Street or subject it to the writ based on

looser notions of notice.  In Mahon v. Moorman, CV 950329017, 1997 WL 120393, at

*4 (Conn. Super. Ct. Feb. 28, 1997), for example, the court recognized that "the

---

  [6] National Re/Sources Investments, likewise, had no independent legal existence
at the time of service if the writ.  (See Pennessi Aff. at ¶ 26.)

plaintiff went to great lengths to ensure that the defendant was notified of the motion for installment payment order" at issue in the postjudgment proceeding, but nonetheless found that the failure of plaintiff to serve defendant in accordance with § 52-350e deprived the court of jurisdiction. Indeed, as the Court in Mahon reasoned, the statutory methods of service preserve important due process rights, lacking with other forms of notice. See id. ("The procedure used by the plaintiff to notify the defendant regarding the hearing on the motion for installment payments lacks due process and did not afford the defendant an opportunity to be heard."); cf. Shedrick v. Shedrick, 627 A.2d 1387, 1390 (Conn. App. Ct. 1993) (by prescribing the methods of service of postjudgment motions in the context of alimony and support, General Statutes § 45b-86(a), the legislature is preserving the due process rights of the opposing party). Connecticut courts have repeatedly found that even actual notice is insufficient to confer personal jurisdiction, absent proper statutory service of process. See, e.g., Sav. Bank of Manchester v. Lane, 690 A.2d 462, 463 (Conn. Super. Ct. 1996) (actual notice to nonresident does not substitute for in-hand or abode service within state, for purposes of personal jurisdiction); Nardella v. Norwich Inn & Spa, No. CV 990421516, 1999 WL 773574, at *4 (Conn. Super. Ct. Sept. 17, 1999) ("[A]ctual notice alone does not settle the question . . . [W]hen a statute prescribes how service is to be made, compliance with the statute is required for personal jurisdiction even when the defendant has actual notice of the summons and complaint.") (citation omitted).

Second, it is significant here that Corsair did not simply misname One Main Street – it served (improperly) real, existing (or formerly existing) entities that

were the wrong parties in interest.  In these circumstances, Corsair's service cannot be

viewed as a mere misnomer or circumstantial defect that may be abated under Conn.

Gen. Stat. § 52-123.[7]  As the Connecticut Supreme Court reasoned in <u>Lussier v. Dep't</u>

<u>of Transp.</u>:

> A misnomer must be distinguished from a case in which the plaintiff
> has misconstrued the identity of the defendant, rather than the legal
> nature of his existence.  When the correct party is designated in a
> way that may be inaccurate but which is still sufficient for
> identification purposes, the misdesignation is a misnomer.  Such a
> misnomer does not prevent the exercise of subject matter jurisdiction
> if the defendant was actually served and knew he or she was the
> intended defendant. This is in contradistinction to the case in which
> the plaintiff has misconstrued the identity of the defendant and has
> therefore named and served the wrong party. The issue, then, is
> 'whether a misnomer is a designation of the right party in a way
> which may be inaccurate but which is still sufficient for identification
> purposes or whether the wrong person has been designated as a
> party.'

<u>Lussier v. Dep't of Transp.</u>, 636 A.2d 808, 812 (Conn. 1994) (quoting 1 E. Stephenson,

Conn. Civil Procedure (2d Ed.1970) § 105e, p. 433); <u>see also</u> <u>Pack v. Burns</u>, 562 A.2d

24, 26 (Conn. 1989) ("The effect given to such a misdescription usually depends upon

the question whether it is interpreted as merely a misnomer or defect in description, or

whether it is deemed a substitution or entire change of party. . . .") (citation omitted).

Likewise, purported service on "National Resources" is not a substitute

for service on One Main Street.  As an initial matter, it is "well settled that the use of a

fictitious or assumed business name does not create a separate legal entity. . . ." <u>Monti</u>

---

[7] Conn. Gen. Stat. 52-123 provides that "[n]o writ, pleading, judgment, or any
kind of proceeding in court or course of justice shall be abated, suspended, set aside or
reversed for any kind of circumstantial errors, mistake or defects, if the person and the
cause may be rightly understood and intended by the court."

v. Wenkert, 947 A.2d 261, 281 (Conn. 2008) (citation omitted).  As such, "no action may be brought against a trade name as an entity and any such proceeding must be considered a nullity."  Greenwood v. Thomas, CV030825933S, 2004 WL 1245501, at *1 (Conn. Super. Ct. May 17, 2004); see also Washington v. Tracey, CV105034700S, 2011 WL 3891343, at *1 (Conn. Super. Ct. Aug. 3, 2011) (dismissing suit brought against trade name of company); State v. Lamar Adver. of Hartford, CV085020325S, 2011 WL 1566981, at *4 (Conn. Super. Ct. Apr. 5, 2011) (no subject matter jurisdiction over case brought against trade name because in the absence of any actually existing legal entity as defendant, "[a]ny judicial decision issued in such a case would be an advisory opinion").  Just as importantly, National Resources is a trade name for a *host* of independent corporate entities.  It is not a simple substitute for One Main Street.  Purported service on "National Resources" does nothing to identify One Main Street as the particular target of the writ.

**B.      Corsair Did Not Comply with Any of the Statutory
         Methods of Service in Conn. Gen. Stat. § 52-350e**

Even if Corsair had served the right parties in interest -- and it did not -- its service remains deficient because it did not comply with any of the statutory methods of service set out in Conn. Gen. Stat. § 52-350e.  That statute, governing service of process in postjudgment proceedings, provides three available methods of service, "[u]nless otherwise provided by section 52-351a, 52-351b, 52-356a, 52-356b or 52-361a":  (1) service "by a proper officer sending a true and attested copy thereof by certified mail, return receipt requested, to a person at his last-known address;" (2) service in accordance with chapter 896 (Conn. Gen. Stat. § 52-45a et seq.); or (3) "as

19

provided by rule of court for service on an appearing party if made on a party who has filed a postjudgment appearance or if made within one hundred eighty days of rendition of judgment on a party who has appeared in the action."

Here, Corsair did not satisfy any of the above methods. Instead, service was purportedly made in hand on member or principal of certain of the Third Parties. (See Pennessi Aff. at ¶ 25.) Not only were the parties served the wrong parties, such manner of service is insufficient as to *foreign* limited liability companies. And here, iPark and i.Park Edgewater are Delaware limited liability companies. (See Pennessi Aff. at ¶ 26).[8] Likewise, the only arguably proper party in interest -- One Main Street -- is a foreign limited liability company, incorporated in Delaware. (See id. at ¶ 28.) While in hand service on a managing member or principal of a *Connecticut* LLC may be proper, it does not constitute proper service on a foreign LLC under chapter 896 of the Connecticut General Statutes, under the specific statutes governing service of process on limited liability companies, or under any of the other statutory provisions referenced in § 52-350e.[9]

---

[8] As discussed above, the other parties served -- National Re/Sources Investments and National Resources -- had no legal corporate existence at the time of service of the writ.

[9] Conn. Gen. Stat. § 52-350e sets out available methods of service of process in postjudgment proceedings which apply "[u]nless otherwise provided by section 52-351a, 52-351b, 52-356a, 52-356b or 52-361a." None of these sections alter Corsair's service obligations. See Conn. Gen. Stat. § 52-351a (applies when a lien is placed on property or when any postjudgment paper, other than a wage or property execution levied against property of a natural person, is served on a third person); § 52-351b (addresses discovery by the judgment creditor); § 52-356a (adds additional obligations to those set forth in § 52-350e for certain nonexempt personal property); § 52-356b (mandates the

Conn. Gen. Stat. § 52-59b(c) is the provision within Chapter 896 of the Connecticut General Statutes governing service on a foreign LLC.  See, e.g., Austen v. Catterton Partners V, LP, 729 F. Supp. 2d 548, 559 (D. Conn. 2010) (holding that § 52-59b applies to foreign limited liability companies, noting that majority of Connecticut courts have held the same).  That statute provides for service to be made on the Secretary of the State, the payment of a fee, and for a copy to be sent by registered or certified mail to the defendant at the defendant's last known address.  See Conn. Gen. Stat. § 52-59b(c).

Similarly, the statute specifically governing service on foreign limited liability companies, Conn. Gen. Stat. § 34-225, provides that where, as here, a foreign LLC has not appointed a statutory agent for service in Connecticut, proper service includes service on the Secretary of State, payment of a fee, and sending the process by registered or certified mail to the LLC's last known address.  See § 34-225(b).  Where service is not made in strict accordance with the statutory precepts, service of process is deficient and personal jurisdiction is lacking.  See, e.g., Pasquariello Elec. Corp. v. Nyberg, CV085024983, 2009 WL 3739445, at *6 (Conn. Super. Ct. Oct. 7, 2009) ("Since the defendants at issue are foreign limited liability companies, and not foreign corporations, § 34-225(b) applies and service must be made on the secretary of the state. Since no service was made on the secretary of the state in the present case, service of process was improper.").

---

use of § 52-356c procedures to determine interests claimed in property subject to execution); § 52-361a (addresses wage executions).

Because Corsair here failed to serve One Main Street -- or the other Third Parties -- in accordance with any of the approved statutory methods for service of process in postjudgment proceedings, One Main Street and the other Third Parties are not properly before this Court.[10]  The writ of execution, therefore, should be dismissed for insufficient service of process, and Corsair's motion for turnover order should be denied.

**POINT II**

**NONE OF THE THIRD PARTIES OWED A DEBT TO
EFS-CONDON, THE JUDGEMENT DEBTOR HEREIN, AND
CORSAIR HAS NOT OBTAINED A JUDGMENT AGAINST EFS-HILDRETH**

Corsair seeks to use this proceeding to enforce a judgment that does not yet exist.  Without ever having obtained a judgment against EFS-Hildreth, the entity with whom One Main Street contracted and to whom One Main Street arguably owed monies, Corsair cannot now impose obligations on One Main Street, or on any of the Third Parties.  Judgment against EFS-Hildreth is a necessary prerequisite to any execution against the Third Parties.  This Court does not have the authority to now impose such judgment, or to impose obligations on the Third Parties in the absence of such judgment.  See, e.g., Bridgeport Water Pollution Control Auth. v. Prof. Servs. Grp, No. 399294, 2004 WL 1925833, at *6-7 (Conn. Super. Ct. July 26, 2004) (noting that "in general, an execution may issue only against a party against whom a money judgment has been

_____

[10] As to the other Third Parties, Corsair either failed to make any service (as in the case of One Main Street, Hudson View Associates, and Westchester Industries) or served non-existent entities (National Re/Sources Investments and National Resources) or foreign entities (i.Park Edgewater and iPark) with no contractual relationship to the alleged judgment debtor.

rendered," and holding that execution against USFilter Operating Services, Inc. ("USFOS") was invalid where judgment was obtained only against a separate company "d/b/a U.S. Filter" and "USFOS was never made a party to this action, did not have a judgment rendered against it and, therefore, did not become a judgment debtor").

The factual record is clear that the legal existence of EFS-Condon, the Judgment Debtor herein, had ceased at the time the Contract was executed. See Exhibit L to Pennessi Aff. (showing revocation of incorporation status of EFS-Condon on November 16, 2010). The "EFS Structures, Inc." entity identified as Subcontractor under the Contract, therefore, was not, and could not have been, EFS-Condon. The Contract was signed by John Hildreth, as promoter on behalf of EFS-Hildreth, and EFS-Hildreth, upon its incorporation in January 2011, ratified the Contract by performing its obligations thereunder. See, e.g., Berman v. Gurwitz, 458 A.2d 1311, 1321 (N.J. Super. Ct. Ch. Div. 1981), aff'd, 458 A.2d 1289 (N.J. Super. Ct. App. Div. 1983) ("The adoption of a pre-incorporation agreement may be evidenced by action of the corporation after it is formed . . . ."); K&J Clayton Holding Corp. v. Keuffel & Esser Co., 272 A.2d 565, 566 (N.J. Super. Ct. Ch. Div. 1971) ("In the context of a promoter having executed the contract, the corporation later coming into existence, the corporation is entitled to all the rights thereunder as well as assuming full liability therefor.") Under the Contract, therefore, One Main Street owed obligations only to EFS-Hildreth, not EFS-Condon.

Corsair's position is that EFS-Hildreth is a successor to EFS-Condon and is liable for EFS-Condon's debts. Corsair, however, thus far has never litigated the issue of successor liability. This is not the forum in which to do so.

**A.     Corsair Has Not Sought to Substitute or**
**        Add EFS-Hildreth as a Party to the Maryland Action**

Corsair had, and has, a procedural path available to it to obtain judgment against EFS-Hildreth, which it thus far has not taken. In order to enforce its judgment against EFS-Hildreth, as a successor entity, Corsair could have sought to substitute or join EFS-Hildreth as a party to the Maryland Action under Federal Rule of Civil Procedure 25(c). Rule 25(c) provides that "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Substitution under Rule 25(c) remains an option even after judgment has been entered. See 5 Bus. & Com. Litig. Fed. Cts. § 57:12 (3d ed. 2012) ("[T]he fact that a judgment already may have been rendered does not preclude substitution under Rule 25(c) for purposes of subsequent proceedings to enforce a judgment under Fed. R. Civ. P. 69(a)."); see also Software Freedom Conservancy, Inc. v. Best Buy Co.., 783 F. Supp.2d 648, 653 (S.D.N.Y. 2011) (addressing plaintiff's post-judgment motion to join additional defendants under Rule 25(c) as successors in interest). Corsair did not file a Rule 25(c) motion in the Maryland Action.

In the alternative, Corsair might have followed applicable state procedures for joining or substituting the successor to the existing enforcement action. See 5 Bus. & Com. Litig. Fed. Cts. § 57:12 (3d ed. 2012). Corsair, however, thus far has not sought

to hold EFS-Hildreth liable for its judgment under the state procedures in the Rule 69

proceeding before this Court, or elsewhere.[11]  This Court, moreover, has no authority to

adjudicate the issue of EFS-Hildreth's liability as a successor, as both personal and

subject matter jurisdiction are lacking.

**B.      Rule 69 Procedures Do Not Permit
         Adjudication of Judgment Against EFS-Hildreth**

Even if Corsair had wished to use this proceeding to hold EFS-Hildreth

liable for its judgment against EFS-Condon, it cannot do so.  Enforcement proceedings

under Fed. R. Civ. P. 69(a) must fall within the so-called ancillary jurisdiction of the

federal court.  Rule 69 does not expand the subject matter jurisdiction of the district

court, or eliminate traditional rules of personal jurisdiction.  See Nat'l Westminster

Bank U.S.A. v. Cheng, 751 F. Supp. 1158, 1161 (S.D.N.Y. 1990) ("post-judgment

jurisdiction … is limited to those actions that a court may take in the same action")

(citing Berry v. McLemore, 795 F.2d 452, 455 (5th Cir. 1986));  Sandlin v. Corporate

Interiors Inc., 972 F.2d 1212, 1215 (10th Cir. 1992) ("Rule 69 creates a procedural

mechanism for exercising postjudgment enforcement when ancillary jurisdiction exists,

---

[11] Under Conn. Gen. Stat. § 52-356c(a), "Where a dispute exists between the
judgment debtor or judgment creditor and a third person concerning an interest in
personal property sought to be levied on, or where a third person claims that the
execution will prejudice his superior interest therein, the judgment creditor or third
person may, within twenty days of service of the execution or upon application by the
judgment creditor for a turnover order, make a claim for determination of interests
pursuant to this section."  The Third Parties have uncovered no authority construing this
section to permit a judgment creditor to proceed against a successor in interest of a
judgment debtor.  Regardless, Corsair *has not sought* here to proceed under § 52-356c,
and, just as importantly, in the circumstances of this case it *cannot* do so, for all of the
reasons discussed below.

but cannot expand the scope of that jurisdiction.") (citation omitted). "Neither Fed. R.

Civ. P. 69 nor the registration provision set forth in 28 U.S.C.A. § 1963 provide a

jurisdictional basis for supplementary proceedings to enforce a judgment, but merely set

forth the applicable procedural regime." 5 Bus. & Com. Litig. Fed. Cts. § 57:10 (3d ed.

2012).

Thus, where a claim does not fall within the court's ancillary jurisdiction,

a separate basis for subject matter and personal jurisdiction must be present before a

court can proceed to adjudicate the matter in a Rule 69 proceeding. See Nat'l

Westminster Bank, 751 F. Supp. at 1160 (holding that Court lacked jurisdiction over

postjudgment proceeding seeking to hold successor entities liable for judgment where

petitioner and respondents were non-diverse); Squeez-A-Purse Corp. v. Stiller, 31

F.R.D. 261, 263-64 (S.D.N.Y. 1962) (holding that court lacked personal jurisdiction

over persons alleged to be in privity with and knowingly acting in concert with judgment

debtor in contempt proceedings to enforce the judgment).

Adjudication of whether EFS-Hildreth is liable for the judgment entered

against EFS-Condon does not fall within the ancillary jurisdiction of this Court.  "[A]

distinction for jurisdictional purposes exists between an action to collect a judgment . . .

and an action to establish liability on the part of a third party. . . . the latter must have its

own source of federal jurisdiction, so that absent an independent basis for federal

jurisdiction a new defendant may not be haled into federal court." Epperson v. Entm't

Express, Inc., 242 F.3d 100, 104 (2d Cir. 2001) (citing Empire Lighting Fixture Co. v.

Practical Lighting Fixture Co., 20 F.2d 295 (2d Cir. 1927)); H.C. Cook Co. v. Beecher,

172 F. 166 (D.Conn.1909), *aff'd,* 217 U.S. 497 (1910).  In Epperson, the Second

Circuit affirmed the long-standing rule that claims of successor liability, alter ego

liability, or veil piercing "raise an independent controversy with a new party in an effort

to shift liability."  Epperson, 242 F.3d at 106.  They are not mere actions to collect on

an existing judgment, and as such, they require an independent jurisdictional basis to

proceed.  See Nykcool A.B. v. Pac. Fruit Inc., 10 CIV 38867 (LAK)(AJP), 2012 WL

1255019, at *5-7 (S.D.N.Y. Apr. 16, 2012) (holding that claims of piercing corporate

veil and successor liability could not be adjudicated in postjudgment proceeding where

personal and subject matter jurisdiction was lacking); RBC Bearings, Inc. v. Thin

Section Bearings, Inc., No. 3:05CV00360, 2007 WL 2727160, at *2 (D. Conn. Sept.

18, 2007) (denying postjudgment motion to enforce the judgment against new parties

where nonparties "have not have a full and fair opportunity to respond to and defend

against plaintiff's allegations") .

      Both personal jurisdiction and subject matter jurisdiction are lacking here.

Plainly, EFS-Hildreth is a necessary party to any adjudication of successor liability.

EFS-Hildreth is a New Jersey corporation operating from Maryland.  (See Exhibit M to

Pennessi Aff.)  It worked as a Subcontractor on the Contract involving the construction

of two buildings in New Jersey.  There has been no showing that EFS-Hildreth transacts

business in Connecticut.  Indeed, Corsair itself is not a resident of this state and does not

maintain a usual place of business in this state, and thus cannot otherwise avail itself of

Connecticut's long arm statute.[12]  EFS-Hildreth has not been identified by Corsair as a party to this case, has not entered an appearance in this case, and has not been served. Its liability cannot be adjudicated in these circumstances.  See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); Nykcool A.B., 2012 WL 1255019, at *5 (same).

Likewise, subject matter jurisdiction is lacking in the absence of complete diversity of citizenship of the parties.  Because the issue of successor liability is a question of state law, the exercise of federal jurisdiction requires complete diversity among the parties.  Cheng, 751 F. Supp. at 1160.  As a limited partnership, Corsair is deemed a citizen of any state in which its general or limited partners reside.  See Carden v. Arkoma Assocs., 494 U.S. 185, 198 (1990) (holding that citizenship of limited partners had to be taken into account to determine diversity of citizenship among the parties).  Corsair has previously represented, in an affidavit submitted on October 6, 2008 in a matter before the United States Court of Appeals for the Fourth Circuit, entitled Corsair Special Situations Fund, L.P. v. A.J.D. Construction Company, Inc., App. No. 08-1541, that Corsair is comprised of partners that are citizens and residents of Connecticut, among other jurisdictions.  (See Pennessi Aff. at ¶ 31, and Exhibit U

_____

[12] Connecticut's long arm statute for corporations, Conn. Gen. Stat. §33-929, extends long arm jurisdiction over a foreign corporation "which transacts business in this state in violation of section 33-920," or otherwise allows "a resident of this state or . . . a person having a usual place of business in this state" to bring suit against the foreign corporation in Connecticut in certain specified cases. Conn. Gen. Stat. § 33-929(e), (f).

thereto.).  The fact that Corsair's partners include residents and citizens of Connecticut

defeats diversity in this case, as One Main Street is also comprised a member that is a

resident and citizen of Connecticut.  (See Pennessi Aff. at ¶ 32).[13]  As diversity is plainly

lacking here, this Court has no authority to adjudicate any claims, such as successor

liability, that are independent of the underlying judgment.[14]

---

[13] As a limited liability company, One Main Street is similarly deemed to be a
citizen of every state in which its members reside.  See Handelsman v. Bedford Vill.
Assocs. Ltd. P'ship, 213 F.3d 48, 52 (2d Cir. 2000) (limited liability company is citizen
of states where members reside).  Here, i.Park Edgewater, a limited liability company, is
a member of One Main Street.  The sole member of i.Park Edgewater is i.Park
Edgewater Holdings LLC, whose sole member, in turn, is i.Park Edgewater
Investments, Inc.  iPark Edgewater Investments, Inc. is a Delaware corporation with a
principal place of business in Greenwich, Connecticut, and is therefore a citizen of both
Delaware and Connecticut.   (See Pennessi Aff. at ¶ 32.)

[14] In the event that the Court disagrees with the Third Parties' threshold
jurisdictional arguments herein, the Third Parties respectfully request entry of a
scheduling order for the purposes of scheduling an evidentiary hearing (and discovery) to
determine:  (a) whether EFS-Condon or EFS-Hildreth is party to the Contract; (b)
whether EFS-Hildreth is a successor to EFS-Condon; and (c) whether One Main Street,
which already made payment of all sums due under the Contract to EFS-Hildreth and/or
its subcontractors, has any obligation to Corsair; before a final decision is rendered.

29

## CONCLUSION

For the foregoing reasons, the Third Parties respectfully respect that the writ of execution be dismissed and Corsair's Motion for Turnover Order be denied, together with such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**NATIONAL RESOURCES, NATIONAL RE/SOURCES INVESTMENTS LLC, IPARK EDGEWATER, LLC, I.PARK, LLC, HUDSON VIEW ASSOCIATES, LLC, WESTCHESTER INDUSTRIES, AND ONE MAIN STREET EDGEWATER, LLC**

By:/s/ Andrew M. Zeitlin
  Andrew M. Zeitlin (ct21386)
  Diane C. Polletta (ct27863)
  Shipman & Goodwin LLP
  300 Atlantic Street, Third Floor
  Stamford, CT  06901-3522
  Tel. (203) 324-8100
  Fax (203) 324-8199
  azeitlin@goodwin.com
  dpolletta@goodwin.com
  Their Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2013, a copy of the foregoing Memorandum in Opposition to Motion for Turnover Order was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew M. Zeitlin
Andrew M. Zeitlin (ct21386)

31

2676632v2