UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CORSAIR SPECIAL SITUATIONS FUND, L.P.** | * | |
| | * | |
| Plaintiff/Judgment Creditor, | | CIVIL ACTION NO.: |
| | * | 3:11-MC-1980(JCH) |
| v. | * | |
| **ENGINEERED FRAMING SYSTEMS, INC.**, *et al.* | * | |
| | * | |
| Defendants/Judgment Debtors. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR TURNOVER ORDER

Judgment Creditor, Corsair Special Situations Fund, L.P. ("Corsair"), by its undersigned attorneys, hereby files this Reply Memorandum in Support of Motion for Turnover Order.

## INTRODUCTION

National Resources[1] is attempting to avoid its obligations under the instant Writ of Execution by playing a corporate shell game. The Opposition tries to distract this Court's attention from the most important and undisputed fact—the owner of all of the National Resources entities, including One Main Street Edgewater, LLC, was personally served with the Writ of Execution, but nevertheless decided to pay Judgment Debtor EFS Structures, Inc. instead of Corsair. Now, National Resources attempts to justify this decision by, for the first time,

---

[1] The Opposition was filed on behalf of National Resources, National Re/Sources Investments LLC, iPark Edgewater, LLC, i.Park, LLC, Hudson View Associates, LLC, Westchester Industries, and One Main Street Edgewater, LLC. These entities are hereinafter collectively referred to as "National Resources." All of these entities are represented by the same counsel and as set forth below and in the initial Motion, operate as one company.

challenging the service of the Writ of Execution. National Resources also argues that the Judgment Debtor is not the same entity that was performing work for it. These arguments are erroneous as a matter of law and fact and should be disregarded. Preliminarily, National Resources has waived its right to challenge service of the Writ of Execution because it has actively participated in this case for well over a year. Furthermore, all known facts demonstrate that the Judgment Debtor EFS Structures, Inc. is the entity that was performing work on National Resources' Edgewater construction project.

## ARGUMENT

**A.   One Main Street Edgewater and all other National Resources Entities are Subject to the Writ of Execution.**

National Resources contends that One Main Street Edgewater ("One Main Street") is the only entity that had property of Judgment Debtor, and that because it was never served with the Writ of Execution, it had no obligation to turnover Judgment Debtor's property to Corsair.[2] What National Resources glosses over is that Lynne Ward, the co-owner of One Main Street (as well as the other National Resources entities), was personally served with the Writ of Execution on September 30, 2011 at her place of business at 485 W. Putnam Avenue, Greenwich, Connecticut. Cotter Dep., at 15-16, 19, 33-34. That building houses the offices of National Resources, National RE/Sources Investments, LLC, One Main Street Edgewater, LLC, iPark

---

[2] As set forth in the Memorandum in Support of Motion for Turnover Order, Corsair denies that One Main Street was the only entity that was responsible for paying EFS Structures, Inc. See Memorandum, at 4-6. Indeed, even Joseph Cotter, the co-owner of the National Resources entities was thoroughly confused as to the different entities' involvement in the Edgewater Project. Mr. Cotter testified that he had no explanation for why National Resources was identified in the Contract as the "Owner" and why One Main Street Edgewater was listed as the "Contractor." See **Exhibit 1,** Deposition of Joseph Cotter ("Cotter Dep."), at 20-21, 30-32. According to Mr. Cotter, National Resources does not conduct business anymore, the "Owner" should have been the One Main Street Edgewater entity and the "Contractor" should have been the Westchester Industries entity. (*Id.*). Additionally, in the discovery that was propounded to certain of the National Resources entities, National Resources produced One Main Street's documents.

Edgewater, LLC, iPark, LLC, Hudson View Associates, LLC and Westchester Industries. *Id.* at 19. The Writ that Ms. Ward was served with contained all of the required information and instructions in accordance with Connecticut law. Specifically, the Writ instructed Ms. Ward "to deliver to the marshal, property in your possession <u>owned by the judgment debtor</u> or pay to the marshal the amount of <u>a debt owed by you to the judgment debtor</u>. . .". *See* **Exhibit 2.** The Writ did not contain the identities of the entities that were subject to the Writ, nor is there a requirement to do so. The Writ is directed at, and applies to, any person or entity in possession of property belonging to or owed to the Judgment Debtor. Upon being served with the Writ, Ms. Ward, on behalf of all entities possessing or owing payment to the judgment debtor (including One Main Street), was obligated to comply with the instructions of the Writ. Ms. Ward failed to do so. Instead, she, along with General Counsel to all of the National Resources entities, Daniel Pennessi, made a conscious decision to ignore the Writ and continue paying Judgment Debtor. This decision was contrary to her obligations under Connecticut law.

The policy underlying Conn. Gen. Stat. § 52-123 underscores Ms. Ward's obligation to abide by the instructions in the Writ as to each individual or entity on whose behalf she is authorized to accept service. Section 52-123 provides: "[n]o writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects if the person and the cause may be rightly understood and intended by the court." Connecticut courts have explained that the purpose of this statute is to address a misnomer when the correct party is designated in a manner that may be inaccurate, but when a defendant "knew it was the intended defendant" despite the misnomer. *Rock Rimmon Grange No. 142, Inc. v. The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 885 A.2d 768, 772 (Conn. App. 2005). *Id.* By contrast, the statute cannot save a

3

claim when a defendant has "named and sued the wrong party." The Supreme Court of Connecticut has explained that when considering the distinction, it evaluates whether the proper defendant (1) had actual notice of the action, (2) knew that it was the proper defendant in the action and (3) "was not in any way misled to its prejudice." *Pack v. Burns*, 212 Conn. 381, 562 A.2d 24, 26 (Conn. 1989).

Unlike other legal papers such as a summons or subpoena, a Writ of Execution is not required to identify the party that it is directed to. The instant Writ was served on the owner of numerous entities, including One Main Street. Additionally, all entities had actual notice of the Writ. Ms. Ward, as owner and agent of numerous entities affiliated and doing business with the Judgment Debtor, and owing payment to Judgment Debtor, was required to comply with the Writ upon service. To find otherwise would impose a restriction on the Writ that is not required by Connecticut law. In this case, the result would be particularly egregious where the facts indicate that all of the entities were virtually one in the same, had actual notice of the Writ and modified the method of payment to Judgment Debtor after service of the Writ to avoid the obligations of the Writ.

**B.     This Court has Personal Jurisdiction Over National Resources.**

National Resources also claims that this Court lacks personal jurisdiction over it because it was not properly served. This argument fails because National Resources has waived its right to assert this defense by failing to timely contest or object to this Court's jurisdiction. Although generally a court can only exercise jurisdiction over a party that has been properly served with process, personal jurisdiction over a party can also be obtained by waiver. Whether a party has forfeited the right to challenge personal jurisdiction is "matter of federal procedural law." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999). A challenge to the sufficiency of

service is "deemed waived if not raised in either defendants' answer to the complaint or in a motion to dismiss." *Credle-Brown v. Connecticut*, 246 F.R.D. 408 (D. Conn. 2007); *see also Datskow v. Teledyne, Inc. Continental Products Div.*, 899 F.2d 1298, 1302 (2d. Cir. 1990) (defendant waived the right to challenge sufficiency of service by failing to timely file a motion to dismiss and in appearing and participating in scheduling proceedings before a magistrate).[3] *See also* 30 AM. JUR.2D, EXECUTIONS § 600 (discussing waiver of personal jurisdiction in the garnishment and attachment context).

In the instant matter, National Resources waived its right to challenge personal jurisdiction because it has actively participated in this action without objection to this Court's jurisdiction. National Resources was served with the Writ of Execution in September 2011 and since that time has answered discovery, appeared for four (4) depositions and appeared for a Contempt Hearing for failing to respond to discovery. Now, over one and half years after being served with the Writ, National Resources attempts to challenge the service of process for the first time. In analyzing whether forfeiture of the right to challenge personal jurisdiction has occurred, federal courts look to the length of time a party has had to assert a personal jurisdiction defense, "the litigation that occurred and the opportunities to litigate the jurisdictional issue that were foregone." *Hamilton*, 197 F.3d at 61. Due to the length of time that has passed since service, and its significant activity in this litigation, National Resources' failure to object or challenge

---

[3] Connecticut state law is identical on this point. "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Sections 10-6 and 10-7 and within the time provided by Section 10-30". Practice Book 1998, § 10-32. Section 10-30 states in part that "[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty [30] days of the filing of an appearance." "Personal jurisdiction is not like subject matter jurisdiction, which can be raised at any time and by the court on its own motion. . . Unless the issue of personal jurisdiction is raised by a timely motion to dismiss, any challenge to the court's personal jurisdiction over the defendant is lost." (Citations omitted; internal quotation marks omitted.) *Foster v. Smith,* 91 Conn.App. 528, 536–37, 881 A.2d 497; see also Practice Book § 10–32;[5] Practice Book § 10–30. *Rock Rimmon Grange No. 142, Inc. v. The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 415-16, 885 A.2d 768, 772-73 (2005).

5

jurisdiction until this late date constitutes a waiver of the defense. This is especially true considering that National Resources has been represented by counsel since the day it was served with the Writ.

**C. EFS Structures, Inc. (a/k/a "EFS-Hildreth") is the Judgment Debtor Subject to Corsair's Judgment.**

National Resources also attempts to argue that Judgment Debtor EFS Structures, Inc. is a separate and distinct entity from the EFS Structures, Inc. that performed work on the Edgewater Project. This nonsensical argument is supported only by inadmissible hearsay and the self-serving documents and information provided to National Resources from John Hildreth, the owner and operator of EFS Structures, Inc. Hildreth has unsuccessfully made the identical argument in both the United States District Court for the District of Maryland and the Superior Court of New Jersey for Mercer County, and this Court should similarly reject this contention. A review of the background of EFS Structures, Inc. demonstrates that the Judgment Debtor EFS Structures, Inc. is the company that was in contract with National Resources for the Edgewater Project and is therefore subject to the Writ of Execution.

　　　*1.　Corporate History of EFS Structures, Inc.*

EFS Structures, Inc. was incorporated on April 24, 2006 by Hildreth's lawyers, Tobia & Sorger, in the State of New Jersey. **Exhibit 3**. Although the "Corporate Data" sheet prepared by Ronald Tobia indicates that Robert Condon is President, Vice-President, Secretary and Treasurer, in fact neither Mr. Tobia nor his firm, have ever been retained by Mr. Condon. Deposition of Robert Condon ("Condon Dep."), at 36, attached hereto as **Exhibit 4**. None of the corporate formation documents, including offers to purchase stock and offers to sell stock, dated February 2, 2007, are signed by Robert Condon. (*See id.* at 24, 44-46). On April 24, 2006, the State of New Jersey issued a Certificate of Incorporation for EFS Structures, Inc. and assigned

the company identification number 0100962056. *See* Exhibit 3. Tobia & Sorger is identified as the Registered Agent and Michelle Disbrow is identified as the "incorporator." *Id.* The Minutes of Annual Meeting of Shareholders indicate that Robert Condon was present at the initial meeting and he is identified both as Chairman and as Secretary. **Exhibit 5**. On July 18, 2006, the IRS issued Federal Tax ID/EIN 20-5219221 to EFS Structures, Inc. **Exhibit 6**.

On or about September 28, 2009, EFS Structures, Inc. became qualified to conduct business in Maryland. *See* **Exhibit 7**. John Hildreth was listed as the Maryland resident agent with an address at Suite 101, 780 Elkridge Landing Road, Linthicum, Maryland 21090. *Id.* Robert Condon's signature purportedly appears on the Foreign Corporation Qualification, however, he has testified that he never signed this document. *See* Transcript of Show Cause Hearing in *Corsair Special Situations Fund, L.P. v. Engineered Framing Systems, Inc., et al*, United States District Court for the District of Maryland; Civil Action No.: 1:10-CV-1993 (MJG) ("Show Cause Tr."), at 5, 9, attached hereto as **Exhibit 8**.[4] On November 15, 2010, EFS Structures Inc.'s qualification was forfeited in Maryland for failure to pay personal property taxes. *See* **Exhibit 9**. On November 21, 2010, the State of New Jersey issued a Certificate of Revocation for EFS Structures, Inc. **Exhibit 10.** The Certificate was mailed to Tobia & Sorger. *Id.* There is no indication that Ronald Tobia notified Robert Condon of the revocation, or of any prior action to establish or operate EFS Structures, Inc. the State of New Jersey.

2.  *Corsair's Litigation against John Hildreth and his corporate entities.*

In August 2006, Corsair filed a lawsuit against Engineered Framing Systems, Inc. ("Engineered")[5] and John and Marie Hildreth for breach of a promissory note in the United States District Court for the District of Maryland styled *Corsair Special Situations Fund L.P. v.*

---

[4] The Show Cause Hearing took place in a patent infringement action that Corsair filed against Hildreth and his various entities on July 21, 2010.
[5] Engineered was a Maryland corporation owned and operated by John Hildreth.

7

*Engineered Framing Systems, Inc.,* et al, Civil Action No. 06-CV-2081 (WDQ).  During John Hildreth's April 2, 2007 deposition, Corsair learned for the first time that Hildreth formed an entity named EFS Structures, Inc.[6]  On May 8, 2007, after Corsair moved for summary judgment, the parties settled the lawsuit and entered into a settlement agreement (the "Settlement Agreement") which was executed by Mr. and Mrs. Hildreth (who guaranteed repayment of the note), Engineered and EFS Structures, Inc.,  wherein they became bound, jointly and severally, to repay the amounts owed to Corsair. *See* **Exhibit 11.**  In the Settlement Agreement the parties acknowledged:

> In or about May 2006, unbeknownst to Corsair, Engineered caused to be established a new corporate entity, [EFS Structures, Inc.], in the State of New Jersey. <u>Since its formation, John J. Hildreth has served as the General Manager of Structures.</u> Structures performs the same services and utilizes the same plant space in Curtis Bay as Engineered. Structures also utilizes many of the same management staff and laborers previously utilized by Engineered. In lieu of litigation between Corsair, Engineered, the Hildreths, and Structures, <u>Structures has agreed to become a party to the Agreement since its General Manager, John Hildreth, has certain patents pending and proprietary assets that are now securing the loan from Corsair to Engineered.</u> Structures desires to use said pending patents and proprietary assets without fear of protracted litigation by Corsair on every project.

*Id.*, p. 2 (emphasis added).  In Section 11 of the Settlement Agreement, Hildreth represented:

> Engineered, [EFS] Structures and the Hildreths warrant that they have fully disclosed and accurately represented to Corsair the existence of their assets and the state of their finances.

Section 13 of the Settlement Agreement is entitled "Structures Acceptance of Obligations*"* and states:

> [EFS] Structures hereby acknowledges and agrees that it is the successor-in-interest to Engineered and is obligated, individually, collectively, jointly and severally, to Corsair for the obligations of Engineered as set forth in the Loan

---

[6] After learning this information, Corsair filed an *ex parte* Motion for Attachment Before Judgment in which it sought to attach all of the account receivables of EFS Structures, Inc.  This motion was granted.

>Agreement and Loan Advance Agreements as an original signatory to the Loan Agreement and Loan Advance Agreements.

Engineered, EFS Structures, Inc. and the Hildreths were represented in the litigation and in the negotiation of the Settlement Agreement by Ronald Tobia. In fact, Hildreth executed the Settlement Agreement in Mr. Tobia's office and Mr. Tobia notarized Hildreth's signatures. *See id.* Although the Settlement Agreement is purportedly executed by Robert Condon on behalf of EFS Structures, Inc., Mr. Condon was completely unaware of the execution of the Settlement Agreement and has testified under oath in both deposition and in a Show Cause Hearing in front of The Honorable Marvin J. Garbis in the United States District Court for the District of Maryland, that the signature that appears on the Settlement Agreement is not his. **Exhibit 8** at 9-12); **Exhibit 4** at 33-36.[7] Mr. Condon has also testified that he had no involvement with EFS Structures, Inc. until November 2009. **Exhibit 4**. at 73.

In December 2007, the parties executed a First Amendment to the Settlement Agreement. Hildreth executed this amendment on behalf of EFS Structures, Inc. *See* **Exhibit 12**. Robert Condon had no knowledge of this amendment. **Exhibit 4** at 37-38. After the default of the defendants, Corsair filed another lawsuit against Engineered, EFS Structures, Inc. and John and Marie Hildreth in the United States District Court for the District of Maryland styled *Corsair Special Situations Fund L.P. v. Engineered Framing Systems, Inc., et al,* Civil Action No. 09-CV-1201 (WDQ) (the "Maryland Action"). On June 9, 2010, the United States District Court for the District of Maryland entered judgment against all of the defendants, including EFS Structures, Inc., in the amount of $4,875,000.00 plus interest (the "Judgment"). Mr. Condon was

---

[7] Robert Condon's signature is notarized by Vitalina A. Valerio in the State of New Jersey on April 24, 2007. This cannot be true, as the final agreement did not exist until May 8, 2007.

9

unaware of this legal proceeding until he was served with a subpoena by Corsair in late 2011. **Exhibit 4** at 30-31.

On November 30, 2010, John Hildreth was deposed as the corporate designee of EFS Structures, Inc. Hildreth testified that he is "an operations manager and operations president" but not "an officer of the company." November 30, 2010 Deposition of EFS Structures, Inc. ("EFS Dep."), at 5, attached hereto as **Exhibit 13**. Hildreth also testified that he believed EFS Structures, Inc. to be in good standing and that it was still in operation. (*Id.* at 19, 22-23). When asked what EFS Structures, Inc. does, Hildreth testified that: "EFS creates the blueprint documents that are the design of the building for the structural system, which would be the vertical elements that support the loads coming down the building as well as the lateral loads caused by various load conditions, and it fabricates those components and then acts as the contractor and install those components in the field to actually do the erection of the structure." (*Id.* at 20).

   3. *EFS Structures Inc.'s Contract with National Resources*

EFS Structures, Inc. has been performing services for National Resources for the Edgewater Project since before September 2010. Deposition of Dan Burton ("Burton Dep."), at 13-16, attached hereto as **Exhibit 14.** On August 26, 2010, Hildreth emailed the design drawings to Joe Cotter from National Resources. **Exhibit 15.** As indicated in the email, the design drawings were forwarded to Hildreth by Mohammad Abdulla, who was a Project Engineer for EFS Structures, Inc. *See* Deposition of John Hildreth ("Hildreth Dep."), at 21-22, attached hereto as **Exhibit 16**. Hildreth has previously testified that none of the employees of Judgment Debtor EFS Structures, Inc. were employed by the "new" EFS Structures, Inc. (*Id.* at 73-74). On October 18, 2010, Hildreth emailed Joe Cotter invoices for work that EFS Structures, Inc.

performed for National Resources.  *See* **Exhibit 17.**  The invoices totaled $65,400.00 and Hildreth represented that EFS Structures, Inc. was previously paid $50,000.00.  *Id.*

On November 18, 2010, EFS Structures, Inc., entered into a contract with National Resources, to perform construction services on the I Park Edgewater development in Edgewater, New Jersey.  Burton Dep. at 15; November 18, 2010 Contract, attached hereto as **Exhibit 18**.  Hildreth signed this contract on behalf of EFS Structures, Inc.  *Id.* p. 15.  Above his signature, Hildreth wrote "EFS Structures, Inc." and the federal tax identification number as "20-5219221."  *Id.*  On January 5, 2011, Hildreth sent an email to Dan Burton of National Resources regarding an invoice sent directly to Hildreth.  Hildreth represented that EFS Structures, Inc.'s address is 780 Elkridge Landing Road, Suite 101, Linthicum, MD  21090.  *See* **Exhibit 19**.  This is the address that is on file with the Maryland State Department of Assessments and Taxation as being the business address of EFS Structures, Inc.  *See* Exhibit 7.  On February 2, 2011, Gene Jones from National Resources requested Hildreth to provide a list of corporate documents relating to EFS Structures, Inc. after Robert Condon informed Mr. Jones that Mr. Hildreth possessed all of the corporate documents**.  Exhibit 20.**  Hildreth responded the same day and directed Mr. Jones to contact Ronald Tobia "who handled the Federal Incorporation in July of 2006 as well as the State work recently." *Id.*  Later, in a February 7, 2011 email to Dan Burton, Hildreth wrote "I have been the owner of the company you contracted with (EFS Structures, Inc. 20-5219221) since July of 2006.  We just activated to do business in the State of New Jersey recently."  *See*  **Exhibit 21**.  Hildreth's counsel, Mr. Tobia, made the same representation to Mr. Burton:  "EFS Structures, Inc. was established in July 2006 with a filing for a Federal ID number.  EFS Structures, Inc. has operated as a company since then. EFS Structures, Inc. has maintained bank accounts in the State of New Jersey and other States since its inception under said Federal ID

11

number." *See* **Exhibit 22**. Mr. Tobia further stated that "EFS Structures, Inc. has performed work on [the] project commencing sometime in the fall of 2010. . ." *Id.*

    4.    *The "New" EFS Structures, Inc. (a/k/a EFS-Hildreth)*

On January 31, 2011, Hildreth, again through Tobia & Sorger, established another EFS Structures, Inc. entity in New Jersey. As with the first-created EFS Structures, Inc., Tobia & Sorger is the resident agent. *See* **Exhibit 23**. Despite the fact that this entity was <u>formed two (2) months after EFS Structures, Inc. entered into the November 18, 2010 contract with National Resources</u>, Hildreth has previously contended that this "new" entity is the proper party to the National Resources contract and a separate entity from Judgment Debtor EFS Structures, Inc. On February 3, 2012, Hildreth attempted to vacate a garnishment judgment against EFS Structures, Inc.'s bank by claiming that the bank account was the property of a "new" EFS Structures, Inc. After Corsair opposed the Motion, Hildreth's counsel wisely withdrew the Motion. *See* **Exhibit 24.** Most recently, on March 29, 2012, after Corsair recorded its judgment in the Superior Court of New Jersey for Mercer County, Hildreth attempted to get clarification from the Court that the judgment was not against the "new" EFS Structures, Inc. On May 11, 2012, the Honorable Paul Innes denied Hildreth's motion, finding Hildreth's affidavit "willfully deficient." Transcript of May 11, 2012 Motion Hearing, at 14, attached hereto as **Exhibit 25**. After reviewing the papers submitted by Hildreth, the Superior Court chastised Hildreth for appearing to play "fast and loose" with the facts. *Id*. at 7.

    5.    *EFS Structures, Inc. is Subject to Corsair's Judgment.*

National Resources' attempt to distinguish the two EFS Structures entities fails for the same reasons that Hildreth's previous attempts failed. Similar to Hildreth, National Resources makes several disingenuous attempts to distinguish the two entities, however, their contentions

are meritless and are nothing more than an attempt to mislead this Court. All known facts demonstrate that Hildreth, not Mr. Condon, was the owner and operator of EFS Structures, Inc. Mr. Condon was unknowingly drafted into EFS Structures, Inc. without his consent by Hildreth, his nephew. (Condon Dep. at 17-24). Specifically, Mr. Condon's name was listed as the owner of EFS Structures, Inc. without his permission and he did not even know that he was listed as an owner or officer until 2009. (*Id.* at 24). Additionally, in a January 27, 2011 email to Mr. Condon, Hildreth denies that Mr. Condon ran EFS Structures, Inc. and challenged Mr. Condon to provide:

> any signed docs, corporate papers, bank accounts, ledgers, corporate ID #s, certificate of good standing, signed checks by [Condon], signed contracts by [Condon], correspondence or estimates by [Condon], meeting minutes with [Condon's] involvement for the past 5 years, website info, bio, credentials, info of any nature that [Condon] directed, supervised, oversaw or ran any part of EFS Structures."

**Exhibit 26.** Hildreth made this challenge to Mr. Condon knowing that Mr. Condon did not possess any of the information because, at all times, John Hildreth was the individual responsible for all operations of Judgment Debtor EFS Structures, Inc. including handling of all finances, decisions on projects and controlling all bank accounts. **Exhibit 4** at 91; **Exhibit 8** at 18-20. Mr. Condon testified on two (2) occasions, including in open court, as to these facts, and this Court should treat his testimony as persuasive.

National Resources contends that the two EFS Structures entities have different tax identification numbers yet it conveniently glosses over the fact that the tax identification number which Hildreth claims was allegedly assigned to his "new" company, was actually assigned to Judgment Debtor EFS Structures, Inc. in July 2006. Both Hildreth and his legal counsel, Ronald Tobia, have acknowledged this fact in their dealings with National Resources. *See* **Exhibits 21 and 22**. Indeed, any contention to the contrary is nonsensical, as it is impossible for the "new"

entity to have had a tax identification number issued over four (4) years before the entity was created. Furthermore, in November 2010, two (2) months before the "new" entity was allegedly created, EFS Structures, Inc. entered into a construction contract with National Resources using the tax identification number that allegedly belongs to this "new" entity. It is evident that both John Hildreth and his counsel, Ronald Tobia were treating the two entities as the same when it was beneficial to them and as separate entities when they were trying to avoid its creditors.

Regardless of whether Hildreth's "new" entity has a different corporate identification number than Judgment Debtor EFS Structures, Inc., it is apparent that the two entities are one in the same. They perform the same business, are both controlled by the same individual (Hildreth), have the same resident agent (Tobia & Sorger), and utilize the same tax identification number (20-5219221). The "new" entity is nothing but a sham that was created solely in an attempt to avoid Corsair's judgment. National Resources' insistence on advancing this argument appears even more disingenuous considering that it did not trust Hildreth's contentions regarding the "new" EFS Structures, Inc. In fact, upon receipt of the Writ of Execution, National Resources insisted upon, and ultimately received, a full indemnification from Hildreth and EFS Structures, Inc. Daniel Pennessi, counsel for National Resources, admitted that the indemnification was "meant to protect the [National Resources] entities to the extent Corsair pursued [National Resources] or any costs or any fees were incurred by any of the entities. . ." Deposition of Daniel Pennessi ("Pennessi Dep."), at 63, attached hereto as **Exhibit 27**.

## CONCLUSION

National Resources was served with a Writ of Execution as to all property of Judgment Debtor EFS Structures, Inc. Despite having actual notice of the Writ, National Resources has intentionally ignored its obligations under the Writ and made a decision to pay EFS Structures,

14

Inc. National Resources allegations that One Main Street, or any other entity that paid EFS Structures, Inc., was not served with the Writ is unsupported by law or fact. Additionally, National Resources has waived its right to challenge service of process. Finally, all known facts demonstrate that Judgment Debtor EFS Structures, Inc. is the entity that was being paid by National Resources.

   **WHEREFORE**, for the reasons set forth in its Memorandum in Support of Motion for Turnover and this Reply Memorandum, Corsair respectfully requests the Court enter an Order for Turnover commanding National Resources, National RE/Sources Investments, LLC, iPark Edgewater, LLC, iPark, LLC, Westchester Industries, One Main Street Edgewater, LLC, and Hudson View Associates to turnover to the Court $2,308,504, which shall thereafter be remitted to Corsair in partial satisfaction of its judgment against EFS Structures, Inc.

                **CORSAIR SPECIAL SITUATIONS FUND, L.P.**

            By:_____/s/ Gregory J. Spaun_____
              Gregory J. Spaun, Esq. (ct28915)
              Welby, Brady & Greenblatt, LLP
              One Landmark Square, 5th Floor
              Stamford, Connecticut  06901
              (203) 363-0081

**CERTIFICATION**

This is to certify that a copy of the foregoing was electronically transmitted, this 14th day of March, 2013, to the following:

>Andrew M. Zeitlin, Esq.
>Diane C. Polletta, Esq.
>Shipman & Goodwin, LLP
>300 Atlantic Street, Third Floor
>Stamford, CT 06901
>azeitlin@goodwin.com
>dpolletta@goodwin.com
>
>*Attorneys for National Resources, National Re/Sources Investments LLC, iPark Edgewater, LLC, iPark, LLC, Hudson View Associates, LLC, Westchester Industries and One Main Street Edgewater, LLC*
>
>Adam C. Harrison, Esquire
>Matthew R. Gerrish, Esquire
>Harrison Law Group
>40 West Chesapeake Avenue, Suite 600
>Towson, Maryland  21204-4891
>aharrison@harrisonlawgroup.com
>
>*Attorneys for Judgment Debtors Engineered Framing Systems, Inc., John J. Hildreth and Marie N. Hildreth*

        _____/s/ Gregory J. Spaun_____
        Gregory J. Spaun