UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CORSAIR SPECIAL SITUATIONS FUND, L.P., | : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 3:11-CV-1980 (JCH) |
| v. | : : | |
| ENGINEERED FRAMING SYSTEMS INC., et al., | : : | DECEMBER 19, 2013 |
| Defendants. | : | |

**RULING RE: THIRD PARTIES' MOTION FOR RECONSIDERATION (Doc. No. 75)**

Plaintiff Corsair Special Situations Fund, L.P. ("Corsair") brought this action to enforce a judgment from the District of Maryland (the "Judgment") against Engineered Framing Systems, Inc., EFS Structures, Inc. ("EFS"), John J. Hildreth ("Hildreth"), and Marie N. Hildreth (collectively, the "defendants"). On September 26, 2013, after a noticed hearing, the court granted Corsair's Motion for Turnover Order, directing certain third parties operating under the National Resources banner (collectively, the "third parties") to deposit $2,308,504 with the court, to be turned over to Corsair pursuant to section 52-356b of the Connecticut General Statutes. See Ruling Re: Pl.'s Mot. for Turnover Order ("Turnover Ruling") (Doc. No. 73). In that Ruling, the court denied a post-hearing request by the third parties for an evidentiary hearing on issues not raised prior to the noticed hearing held by the court on August 20. Id.

Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 7(c), the third parties now move the court to reconsider its September 26 Ruling and/or to relieve them from that Ruling on two grounds: (1) enforcing the Ruling would work a manifest injustice; and (2) the third parties' failure to present counterevidence regarding the amount owed to EFS was the result of mistake,

1

inadvertence, surprise, or excusable neglect. For the reasons set forth below, the third parties' Motion (Doc. No. 75) is **DENIED**.

I.     STANDARD OF REVIEW

   A.     Rule 59(e) and Local Rule 7(c)

The standard for granting a motion for reconsideration is strict, and such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995). In general, granting a motion for reconsideration is only justified if there is an intervening change in controlling law, newly discovered evidence, or the need to correct clear error or prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l. Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).

   B.     Rule 60(b)

The decision as to whether relief should be granted under Rule 60(b) is committed to the sound discretion of the court. Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012). The court may relieve a party from a final judgment, order, or proceeding for, inter alia, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The determination of which sorts of neglect will be considered "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship, 507 U.S. 380, 395 (1993). These circumstances include "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the

reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. Ordinarily, ignorance of the rules or mistakes construing the rules do not constitute "excusable" neglect. Id. at 392. However, "neglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations, or where an apparent conflict exists between two rules." Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997).

## II.  DISCUSSION

The court assumes familiarity with the factual and procedural background of this case, as detailed in the September 26 Ruling. Much of the third parties' present Motion seeks to relitigate the issue of whether Corsair carried its initial burden of proof to support the court's issuance of a turnover order. See Third Parties' Mem. (Doc. No. 75) at 5-12. Based on the parties' briefs and exhibits, including the third parties' belated Supplemental Memorandum, the court already decided that issue. See Turnover Ruling at 21-23. The third parties point to no newly discovered evidence or intervening change in controlling law to warrant the court's reconsideration on that point.

The third parties, however, also move the court to reconsider its Ruling and/or to relieve them from that Ruling on two related grounds: (1) enforcing the Ruling would work a manifest injustice; and (2) the third parties' failure to present counterevidence regarding the amount owed to EFS was the result of excusable neglect. Each ground is without merit.

### A.  Manifest Injustice

On September 30, 2011, Corsair served the Writ of Execution issued by this court on the third parties. After extensive discovery, including a substantial period of noncompliance by the third parties, see Doc. Nos. 8, 10, 16, 18, 19, 30 & 31, Corsair

moved the court for a turnover order on January 17, 2013, see Pl.'s Mot. for Turnover Order (Doc. No. 33). In that Motion, Corsair unambiguously identified $2,308,504 paid to or on behalf of EFS subsequent to service of the Writ. Id. ¶¶ 1, 7. Nowhere in their submissions to the court do the third parties allege that this amount was not paid to or on behalf of EFS after September 30.

Rather, the third parties now allege for the first time in this Motion that only $118,742.88 was owed to EFS at the time of service of the Writ. See Third Parties' Mem. (Doc. No. 76) at 2-3. The disparity between $118,742.88 and $2,308,504 is substantial indeed. However, there has been over a year of discovery in this case. It is all the more extraordinary, then, that the third parties raised the issue of the amount owed to EFS only belatedly in their Supplemental Memorandum and offered no counterevidence indicating which, if any, amounts paid subsequent to service of the Writ should be excluded from the turnover order because such amounts were not subject to levy. See Turnover Ruling at 22-23.

In support of the present Motion, the third parties offer: (1) two additional payment applications for the period immediately prior to service of the Writ, see Doc. No. 77-3;[1] (2) an annotated list of account transactions prior to service of the Writ, see Doc. No. 77-2; and (3) another affidavit from in-house counsel, Daniel Pennessi, see Doc. No. 77. In his affidavit, Attorney Pennessi attests that the contract provided for progress payments, id ¶ 4; that only $118,742.88 was due to EFS on September 30,

---

[1] Notably, these two payment applications—as well as any subsequent ones—were not among the numerous such applications that accompanied Corsair's Motion for Turnover Order. See Pl.'s Ex. E to Pl.'s Mot. (Doc. No. 33-5). At oral argument, counsel for Corsair stated that Corsair's submissions contained all payment applications produced by the third parties. There is, then, a question as to whether all such applications were turned over to Corsair, as required, see Doc Nos. 8 & 10, or whether some were withheld and are only now being submitted to the court.

2011, id. ¶ 6; and that the third parties' direct payments to vendors and subcontractors subsequent to service of the Writ were permitted under the contract, id. ¶¶ 9-10.  This "evidence" primarily rests on legal arguments and does not suffice to demonstrate a manifest injustice from enforcing the court's September 26 Ruling.

First, the Writ unambiguously directed the third parties to pay any debt owed to the Judgment Debtor if that debt became payable within four months of the Writ's issuance.  See Doc. No. 5 at 2.  Based on the third parties' business records and answers to the court's questions at oral argument, there is no dispute that all remaining payments to EFS—totaling over $680,000—were made in that four-month period.  See Ex. F to Pl.'s Mot. (Doc. No. 33-6).  On the court's reading of Connecticut's postjudgment procedure, as set forth in section 52-356a of Connecticut General Statutes, all of these payments were subject to levy.[2]

Second, the third parties have supplied no evidence corroborating that the substantial payments to other parties—totaling over $1.6 million—were not contractually owed to EFS.  Although Attorney Pennessi attests that payments were made to vendors as a result of EFS's default in making these payments, Article 3.4 of the Contract required—prior to the creation of any contractual right to redirect these payments—the provision of written notice of default to EFS, plus EFS's failure to cure within five days of that notice.  See Doc. No. 77-1 at 5.  No written notices were submitted to the court.  At oral argument, Attorney Zeitlin, as counsel for the third parties, represented that he had

---

[2] The third parties' citation to F & W Welding Serv., Inc. v. ADL Contracting Corp., 217 Conn. 507, 515 (1991), is not to the contrary.  F & W Welding deals with the statute governing prejudgment attachment or garnishment, Conn. Gen. Stat. § 52-329, which statute contains no four-month period.  The third parties cite no case law excepting progress payments from a writ of execution, where those payments fall within the four-month period during which the writ of execution is operative under Connecticut law.

never seen such a notice, but that EFS approved or waived objection to the third parties' direct payments to these other parties. In that case, however, such payments were effectively made on EFS's behalf and were subject to levy.

Indeed, the record indicates that some of the third parties' payments to these other parties, such as payments to Tiara Consulting to cover EFS's insurance, were explicitly made at EFS's direction. See Schuyler Aff. (Doc. No. 33-12) at 51-52. In fact, starting on October 6, 2011, shortly after service of the Writ, the third parties paid EFS itself through an account under the name of EFS Global, even though the third parties had no contract with that entity. See Schuyler Aff. (Doc. No. 33-12) at 47-50. As set out in Article 3.4 of the Contract, the third parties' right to deduct payments to other parties from the amount owed to EFS depended on written notice of default and EFS's failure to cure within five days. See Doc. No. 77-1 at 5. Without such notice, these payments to other parties are effectively indistinguishable from payments at EFS's direction or on EFS's behalf.

Finally, while some of these payments were made outside the four-month period covered by the Writ, nothing in the present record supports the conclusion that they were not payable within that period. The fact that EFS received all payments to itself before the period elapsed supports the inference, on the contrary, that all work under the Contract was likewise certified as payable by then and, hence, that all payments were subject to levy. As the court observed in its Turnover Ruling, "if evidence exists disproving that implication, such evidence has no doubt long been in the third parties' possession." See Turnover Ruling at 22. Either no such evidence exists, or the third parties did not produce it in discovery and have declined to present it to this court.

In principal part, the third parties' Motion impermissibly seeks to recast evidence already before the court under new legal theories. See Sequa, 156 F.3d at 144 ("It is well-settled that Rule 59 is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"). The third parties have yet to supply new evidence contradicting the court's conclusion, in its September 26 Ruling, that the amount sought by Corsair had been paid in violation of the Writ and, therefore, was properly subject to the court's issuance of a turnover order. Absent such evidence, the third parties' Motion for Reconsideration on the ground of manifest injustice must be denied.

  B. Excusable Neglect

The third parties also move for relief from the court's Ruling under Rule 60(b)(1), arguing that they were denied their statutory right to a hearing due to counsel's excusable neglect in misconstruing the hearing held by the court as oral argument. See Third Parties' Mem. at 14-15. That argument is equally unavailing.

Section 52-356b of the Connecticut General Statutes provides for issuance of a turnover order "after notice and hearing." Conn. Gen. Stat. § 52-356b(b).[3] Mindful of its statutory obligations, the court issued a Notice to Counsel and Order (Doc. No. 65) whose first line reads: "Pursuant to Section 52-356b of the Connecticut General Statutes, the court intends to hold a hearing on plaintiff's Motion for Turnover Order (Doc. No. 33) on July 8, 2013 at 12:00 p.m." Id. (emphasis added). The court held this hearing on August 20. See Doc. Nos. 69 & 70.

---

[3] Section 52-356b also provides for issuance of a turnover order without notice and a hearing in circumstances not applicable here. See Conn. Gen. Stat. 52-356(b) & (c).

7

Nothing prevented the third parties, either before or at that hearing, from challenging which payments were covered by the Writ. The third parties chose a different legal strategy centered on personal jurisdiction.[4] As the court noted in its September 26 Ruling, "section 52-356b(b) sets out the process due in connection with a motion for turnover order, and no process beyond the statutory notice and hearing is required under Connecticut law." Turnover Ruling at 21. Prior to the August 20 hearing, the third parties raised several issues, and the court received extensive briefing and evidentiary exhibits. The August 20 hearing was devoted to consideration of these issues, which the court addressed at length in its Ruling. In the court's view, these issues have been fully and fairly litigated. The third parties do not suggest otherwise in the present Motion.

Rather, the third parties seek to litigate an issue raised <u>after</u> the August 20 hearing—namely, which payments were covered by the Writ. The court expressly considered the issue in its September 26 Ruling and, having considered the issue, denied the third parties' request for an evidentiary hearing on three grounds: (1) the third parties <u>had</u> an opportunity to argue the issue; (2) Corsair made a prima facie

---

[4] The third parties could and did make arguments in the alternative, including an argument for an evidentiary hearing to resolve factual disputes regarding the identity of the judgment debtor and any outstanding obligations to Corsair. <u>See</u> Third Parties' Opp'n (Doc. No. 41) at 29 n.14. The third parties could as easily have raised the issue now before the court, but chose not to do so.

At oral argument, Attorney Zeitlin represented that this footnote in the third parties' Opposition brief was intended as a "catch-all." Even assuming that this is a plausible interpretation of that footnote, there is no basis in law for a party to reserve issues that it could have argued but did not. On the contrary, counsel's failure to timely raise and fully address an issue ordinarily forfeits a party's right to have that issue decided by the court. <u>See</u> <u>Pioneer</u>, 507 U.S. at 396-97 ("[C]lients must be held accountable for the acts and omissions of their attorneys."); <u>see</u> <u>also</u> <u>Norton v. Sam's Club</u>, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

8

showing that the amount sought was paid in violation of the Writ; and (3) the third parties offered no counterevidence.  See Turnover Ruling at 21-24.

The excuse offered by the third parties for their neglect in belatedly raising the issue does not meet the standard of "excusable neglect" under Rule 60(b)(1).[5]  The court issued adequate notice, citing the very statute pursuant to which the court was holding a hearing.  See Doc. No. 65.  Attorney Zeitlin's failure to read and appreciate the significance of the court's Notice to Counsel and Order is not excusable.  See Canfield, 127 F.3d at 251.[6]  Moreover, even assuming the court were, in its discretion, to excuse the third parties for counsel's oversight, the failure to raise the present issue in any briefing prior to the August 20 hearing remains both unexplained and inexcusable.

The third parties' position that they could put forward some defenses, yet lie in wait with respect to others, has no basis in law.[7]  Deciding which arguments to mention, in which order, and so forth is a matter of legal strategy.  Part of this considered choice of legal strategy is deciding which arguments to forgo.  Rule 60(b)(1) provides no relief

---

[5] The Second Circuit cases cited by the third parties are not to the contrary.  See Third Parties' Mem. at 4-5 (citing Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993)).  Those cases all involved relief from default judgment and, hence, application of "the liberal standards of [Rule] 55(c) rather than the more rigorous ones of Rule 60(b)."  Davis, 713 F.2d at 918 (emphasis added).   The third parties filed an appearance, see Doc. Nos. 34 & 35, and vigorously opposed Corsair's Motion, see Doc. Nos. 41, 42 & 48.  The court's September 26 Ruling was a decision on the merits, not a judgment entered following entry of default against a non-appearing party.

[6] Whatever misunderstanding as to the nature of the proceeding subsequently arose in scheduling conversations between counsel does not excuse counsel's admitted failure to read for himself the court's unambiguous Notice to Counsel and Order.

[7] The third parties' position that they could raise defenses seriatim, rather than present all pertinent issues to the court in their Opposition brief, is even more inexplicable in the context of this postjudgment proceeding.  The third parties were served a writ of execution, not a summons, and the court had before it a single pending motion:  Corsair's Motion for Turnover Order (Doc. No. 33).  The third parties could not reasonably have expected to raise jurisdictional defenses first and, only if those failed, to assert alternative defenses later.

for "mere dissatisfaction in hindsight" with the consequences of a party's chosen course of action.  Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986); see Ackermann v. United States, 340 U.S. 193, 198 (1950) ("[F]ree, calculated, deliberate choices are not to be relieved from."); Smalls v. United States, 471 F.3d 186, 191 (D.C. Cir. 2006) ("Rule 60 cannot be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." (citation, alteration, and internal quotation marks omitted)).

### C.   Equitable Considerations

Motions for reconsideration due to "manifest injustice" and for relief due to "excusable neglect" both derive from equitable principles.  See Motorola Credit Corp. v. Uzan, 561 F.3d 123, 127 (2d Cir. 2009) ("The discretionary relief available under Rule 60(b) is equitable."); Charles Alan Wright et al., Federal Practice & Procedure § 2801 (3d ed. 2013) (explaining Rule 59's history and purpose).  In the court's view, neither "manifest injustice" nor "excusable neglect" is present here, and the equities do not favor reconsideration or other extraordinary relief in this case.

First, the present enforcement action is over two years old, and the danger of prejudice to Corsair is not de minimis.  Even ignoring the resources expended by Corsair to prosecute the original case and secure the underlying Maryland Judgment, the court cannot ignore the considerable resources Corsair expended simply to compel the third parties' compliance with initial interrogatories and production requests.  See Doc Nos. 8, 10, 16, 18, 19, 21, 22, 25, 30 & 31.  Second, all evidence in the third parties' possession regarding payments and obligations to EFS should long ago have been produced to Corsair as part of discovery and, therefore, could easily have been

included with the parties' prior submissions to this court.[8]  Third, the issues timely raised by the third parties were fully briefed, carefully considered by the court after hearing from the parties, and decided on the merits.  Fourth, not only is the present Motion a thinly veiled attempt to take another bite at the proverbial apple; the evidentiary hearing sought by the third parties would serve no clear purpose.  The present dispute regarding which payments were covered by the Writ is largely legal, not factual.  The third parties point to no discrepancies in the record requiring live testimony and assessments of witnesses' credibility.[9]  Finally, because the court already addressed the legal issues in its September 26 Ruling, and again in the present Ruling, the interest of judicial economy is better served by denying the third parties' motion for reconsideration or other relief.  Cf. Dietrich v. Bauer, 198 F.R.D. 397, 400 (S.D.N.Y. 2001) ("Like a motion under  Rule 59(e), a Rule 60(b) motion is not a substitute for an appeal.").

In sum, the third parties have shown neither an injustice in the amount sought nor a deprivation of due process that was not an effect of their own legal strategy.  Furthermore, given the nature and history of this case, equitable considerations do not favor granting reconsideration or other extraordinary relief.

---

[8] Corsair's initial interrogatories and requests for production were served on the third parties simultaneously with the Writ.  Corsair asked directly about the amount due to EFS, as well as about any amount yet to become due, and requested production of all documents relating to EFS's work on the Edgewater Project, including all payment applications and invoices.  See Ex. D to Pl.'s Mot. to Compel Compliance (Doc. No. 8) at 25, 28.  The interrogatories were continuing in nature and required the third parties to file supplemental answers if new or different information became available.  Id. at 23.

[9] At oral argument, Attorney Zeitlin gave no clear indication of what evidence the third parties intended to offer at a second hearing, stating that he would need to see what the plaintiff offered first, despite the fact that Corsair already submitted such evidence with its original Motion for Turnover Order.  This wait-and-see approach is not a basis for granting a request for a rehearing.

### III. CONCLUSION

For the reasons stated above, the court **DENIES** Corsair's Motion for Reconsideration (Doc. No. 75).

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of December, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
