**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CORSAIR SPECIAL SITUATIONS FUND, L.P. | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-01980 (JCH) |
| v. | : | |
| | : | |
| ENGINEERED FRAMING SYSTEMS INC., et al., | : | JANUARY 11, 2016 |
| Defendants. | : | |

**RULING RE: MOTION FOR AWARD OF FEES (DOC. NO. 98-1)**

**I.    INTRODUCTION**

On September 27, 2011, after successfully obtaining a judgment against the

Defendants Engineered Framing Systems, Inc., EFS Structures, Inc., John J. Hildreth,

and Marie N. Hildreth in the United States District Court for the District of Maryland, the

plaintiff Corsair Special Situations Fund, L.P. ("Corsair") registered the foreign judgment

in this court.  See Registration of Foreign Judgment (Doc. No. 1).  On September 29,

2011, Corsair obtained a Writ of Execution.  See Writ of Execution (Doc. No. 7) (the

"Writ").  On September 30, 2011, Interested Party State Marshal Mark A. Pesiri ("Pesiri")

served the Writ and discovery requests on various third parties (collectively, "National

Resources").  See Ruling Granting Plaintiff's Motion for Turnover Order at 2 (Doc. No.

73) ("Turnover Order").

After nearly two years had passed without satisfaction of the execution or the

discovery requests, and significant proceedings in and out of court, the court issued the

Turnover Order ordering the third parties to pay into court $2,308,504.  See id. at 24.

The Court of Appeals for the Second Circuit affirmed this Turnover Order on March 11,

1

2015.  See Summary Order (Doc. No. 96).  On March 25, 2015, Corsair notified Pesiri

that the case had come to a close and requested an invoice for his services.  See

Partial Opposition to Connecticut State Marshal Mark A. Pesiri's Motion to Intervene at

5 (Doc. No. 99) ("Pl.'s Mot. for Award of Fees Opp'n").  In response, Pesiri demanded a

fee of $346,275.60, which is 15% of the amount the court granted Corsair in the

Turnover Order.  Id.[1]  Corsair contends that Pesiri is due a fee of only $30, plus

compensation for mileage.  Id. at 10.

On June 5, 2015, $2,311,043 was wired to the court in satisfaction of the

Turnover Order.  See Order at 1 (Doc. No. 106).  On June 16, the court ordered that

$1,964,767.40, which represented the difference between the $2,311,043 that was

wired to the court and the $346,275.60 that Pesiri sought in fees, be paid over to

Corsair.  See id. at 2.

Pending before the court is Pesiri's Motion for Award of Fees (Doc. No. 98-1)

("Mot. for Award of Fees"), in which Pesiri requests an award of fees in the amount of

$346,275.60.  See Mot. for Award of Fees at 6, ¶ (b).  For the following reasons, the

Motion is granted.

## II.   DISCUSSION

Pesiri claims that, upon effective service of the Writ, he became entitled to 15%

of the execution amount, pursuant to C.G.S.A. § 52-261(a).  See id. at 1-2.  In

response, Corsair argues that, in order for Pesiri to have become entitled to the 15% fee

---

[1] The court notes that, in equitable proceedings, "the court must exercise its discretion in determining a reasonable fee" for a marshal's services, even if a statute mandates a certain percentage fee, as C.G.S.A. § 52-261 does. Adams v. Adams, No. KNOFA124119598S, 2014 WL 2922628, 2014 WL 2922628, at *2 (Conn. Super. Ct. May 27, 2014).  However, because the present action is not a suit in equity, the court here does not have similar discretion.  Rather, if Pesiri is, in fact, entitled to the 15% fee contemplated by C.G.S.A. § 52-261, the court may not reduce his fee amount.

provided for in C.G.S.A. § 52-261(a)(2)(F), he must have first levied on National Resources' property.  See Pl.'s Mot. for Award of Fees Opp'n at 7.  Corsair asserts that Pesiri merely served the Writ on National Resources, without ever levying National Resources' property.  Id.

Section 52-261 of the Connecticut General Statutes is titled, "Fees and expenses of officers and persons serving process or performing other duties."  C.G.S.A. § 52-261.[2]  At the outset, it provides that "each officer or person who serves process, summons or attachments . . . shall receive a fee of not more than forty dollars for each process served."  Id.  It subsequently provides that additional "fees shall be allowed and paid" for various acts.  Id.  Of importance to this case, subsection (a)(2)(F) states that the following fee should be "allowed and paid": "for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per cent on the amount of the execution, provided the minimum fee for such execution shall be thirty dollars."  Id.

Before the court can determine whether Pesiri's actions entitled him to the 15% fee, the court must first determine what must occur in order for the entitlement to arise. It is not immediately clear whether section 52-261(a)(2)(F) contemplates two factual circumstances in which the 15% fee entitlement is triggered, or three.  Section 52-261(a)(2)(F) contains five distinct clauses, each of which is separated from the other clauses by a comma.  The final two clauses are uncontroversial, as they simply state

---

[2] The current version of the statute, which took effect on October 1, 2014, is substantively the same as the statute as it existed in 2011, when Pesiri served National Resources.  The only notable difference is that, under the current version the base fee for service of process on behalf of a non-governmental individual is $40, whereas the base fee under the 2011 version was $30.  Compare C.G.S.A. § 52-261 with Pl.'s Mot. to Intervene Opp'n Ex. A at 1.  Because the difference between $30 and $40 for service is immaterial to the resolution of the instant dispute, the court will refer to the current version of the statute.

the additional fee amount envisaged by subsection (F): either 15% of the amount of the execution or $30, whichever is greater.

On the other hand, the first three clauses are clumsily drafted and require greater attention.  One interpretation of these three clauses, with which the court agrees, is that the second and third clauses modify the first clause.  Under this interpretation, the officer qualifies to become entitled to the additional fee: (1) if there is a "levy of an execution" and the money is "actually collected and paid over" or, (2) there is a "levy of an execution" and "the debt or a portion of the debt is secured by the officer."

A second interpretation reads the first three clauses as disjunctive, and contemplates three scenarios in which the officer becomes entitled to the additional fee.  Under this interpretation, an officer becomes entitled to the 15% fee if any one of the following three events occurs: (1) the [officer's] levy of the execution; (2) the money is actually paid over from the judgment debtor or a third party to the judgment creditor; or, (3) the officer secures the debt, or a portion thereof.

The broader structure of section 52-261 convinces the court that the former interpretation is the correct one.  Section 52-261 contains the following 11 subsections, each of which provides an additional fee for a particular action:

> The following fees shall be allowed and paid: (A) For taking bail or bail bond, one dollar; (B) for copies of writs and complaints, exclusive of endorsements, one dollar per page, not to exceed a total amount of nine hundred dollars in any particular matter; (C) for endorsements, forty cents per page or fraction thereof; (D) for service of a warrant for the seizure of intoxicating liquors, or for posting and leaving notices after the seizure, or for the destruction or delivery of any such liquors under order of court, twenty dollars; (E) for the removal and custody of such liquors so seized, reasonable expenses, and twenty dollars; (F) for the levy of an execution, when the money is actually collected and paid over, or the debt or a portion of the debt is secured by the officer, fifteen per

cent on the amount of the execution, provided the minimum fee for such execution shall be thirty dollars; (G) on the levy of an execution on real property and on application for sale of personal property attached, to each appraiser, for each half day of actual service, reasonable and customary expenses; (H) for causing an execution levied on real property to be recorded, fees for travel, twenty dollars and costs; (I) for services on an application for the sale of personal property attached, or in selling mortgaged property foreclosed under a decree of court, the same fees as for similar services on executions; (J) for committing any person to a community correctional center, in civil actions, twenty-one cents a mile for travel, from the place of the court to the community correctional center, in lieu of all other expenses; and (K) for summoning and attending a jury for reassessing damages or benefits on a highway, three dollars a day.

Ten of these subsections are constructed in a similar fashion: the first clause begins with the word "for," which word is then followed by a specific action, which is then followed by a comma, which is then followed by a dollar amount.  For example, subsection (A) reads: "[f]or taking bail or bail bond, one dollar."  Subsection (C) reads: "for endorsements, forty cents per page or fraction thereof."  Some of the subsections include additional words, but it is clear that they modify the action that immediately follows the word "for."  For example, subsection (B) reads: "for copies of writs and complaints, exclusive of endorsements, one dollar per page, not to exceed a total amount of nine hundred dollars in any particular matter."  Here, the clause "exclusive of endorsements," which comes after the action "for copies of writs and complaints" and before the dollar amount of "one dollar per page, not to exceed a total amount of nine hundred dollars in any particular matter," clearly modifies the action "for copies of writs and complaints."  The natural reading of subsection (B) is that an officer is entitled to an additional fee of one dollar per page, capped at $900, for making copies of writs and complaints, but not for copies of endorsements.  Similarly, subsection (J) includes a

modifying clause, when it provides an additional fee "for committing any person to a community correctional center," but only "in civil actions."

Subsection (F) falls within this pattern.  It begins with the word "for" and includes an action – "for the levy of an execution."  As in subsections (B) and (J), there are additional, following clauses inserted into subsection (F) after the initial clause and before the dollar amount.  Like those other sections, it is clear here that the other two clauses modify the first clause.  They simply describe aspects of the levying process. They do not create additional, independent scenarios in which the officer would be entitled to the 15% fee.

If the drafters of the section 52-261 wanted, in subsection (F), to create three separate ways for an officer to earn the additional 15% fee, they would have drafted subsection (F) analogously to how they drafted subsection (D).  Subsection (D) reads as follows: "for service of a warrant for the seizure of intoxicating liquors, or for posting and leaving notices after the seizure, or for the destruction or delivery of any such liquors under order of court, twenty dollars."  C.G.S.A. § 52-261(a)(2)(D) (emphasis added).  Here, there are three separate clauses that precede the fee amount of $20. Each of those phrases begins with the words "for" or "or for."  It is clear that subsection (D) envisages three distinct actions that, when any one is taken, would entitle the officer to the additional fee of $20.  The fact that the second and third clauses of subsection (F) do not include the word "for" again, as the second and third clauses of subsection (D) do, further supports the court's conclusion that the 15% fee provided for in subsection (F) is triggered if there has been a "levy of an execution" and the money was "actually collected and paid over," or if there has been a "levy of an execution" and "the debt or a

6

portion thereof is secured by the officer."  Put simply, the fee of 15% is "for" the levy of the execution.  An officer can only receive the fee if he has levied the execution and the money is "actually collected and paid over" or, he has levied the execution and "the debt or a portion thereof is secured by the officer."

Although the act of levying an execution is a condition precedent to an officer becoming entitled to the 15% fee, before discussing whether Pesiri adequately levied an execution, it bears noting that there is no dispute that the money was "actually collected and paid over."  The money owed to Corsair was "actually collected and paid over" when the money was wired to the court ("actually collected") and when the court sent a check to Corsair ("paid over").[3]  Thus, given that the money was "actually collected and paid over" to Corsair, the sole issue in dispute is whether Pesiri levied the execution.  If he did levy the execution, then he is entitled to the 15% fee.  If he did not levy the execution, then he is not so entitled.

The statute does not define what the phrase "levy of an execution" means. However, various sources suggest that the phrase requires the officer to seize, either actually or constructively, the property or the assets of the judgment debtor or third party, in satisfaction of the execution.  According to Black's Law Dictionary, the word "levy," in the context of "levy of execution" is defined as: "The legally sanctioned seizure and sale of property; the money obtained from such a sale."  Black's Law Dictionary (10th Ed. 2014).  According to Corpus Juris Secundum, "[a] sheriff's entitlement to a

_____

[3] Corsair does not argue, nor could it, that Pesiri is not entitled to his fee by virtue of the fact that National Resources first disregarded the Writ and paid money directly to the judgment debtor, and later paid money directly to the court.  See Masayda v. Pedoncelli, No. CV94-0120878S, 1998 WL 420779, at *2 (Conn. Super. Ct. July 20, 1998) ("Certainly, after levying the execution, payment by the debtor directly to the creditor should not deprive the sheriff of his fee").

statutory collection fee matures only when the property levied upon, or the money from its sale and execution, is legally seized by the sheriff and turned over to the judgment creditor."  80 C.J.S. Sheriffs and Constables § 525.

In Nemeth v. Gun Rack, Ltd., 659 A.2d 722 (Conn. App. Ct. 1995), the court engaged in a lengthy discussion of the word "levy" and the phrase "levy of a writ of execution" while trying to interpret a different Connecticut statute.  The court stated:

> "Goods are levied as part of the process of execution of a judgment. 'Execution is a remedy afforded by law for the enforcement of a judgment, its object being to obtain satisfaction of the judgment on which the writ is issued.' 30 Am.Jur.2d, Executions and Enforcement of Judgments § 43 (1994). 'The execution of a writ of execution consists of two acts, the levy, or taking property into possession of the sheriff for sale, and the execution sale itself.' Id., § 213. 'The levy of a writ of execution is an act in the course of a judicial proceeding. It has been described as an act of dominion over specific property by an authorized officer of the court which, but for the writ under which he proceeds, would be a trespass, conversion, or other unlawful invasion of a property right, and which results in the creation of a legal right to subject the debtor's interest in the property to the satisfaction of the debt of his judgment creditor . . . . ' Id. 'At common law a levy on goods consisted of an officer's entering the premises where they were and either leaving an assistant in charge of them or removing them after taking an inventory. Today courts differ as to what is a valid levy, but by the weight of authority there must be an actual or constructive seizure of the goods.' Ballentine's Law Dictionary (3d Ed.1969). 'A levy on personal property is generally defined as a seizure of the property. Thus, in most jurisdictions, it is essential to the completion of a levy of execution upon personal property that there be a seizure, either actual or constructive, of the property.' 30 Am.Jur.2d, Executions and Enforcement of Judgments § 234 (1994). 'An execution officer has been held to have done all that is required to effect a levy on the contents of a judgment debtor's store, where he went to the store, saw the goods, asserted his right to them by virtue of his levy within the hearing of the judgment debtor, and indorsed on the execution the fact that a levy had been made.' Id., § 238."

Id. at 726.  Both the definition that appear in Black's Law Dictionary and Corpus Juris Secundum, and the excerpted discussion from Nemeth, support the conclusion that to

"levy an execution" means to seize, either actually or constructively, goods or money from the judgment debtor or third party in satisfaction of the execution.[4]

While it is clear to the court that Pesiri did not <u>actually</u> seize any of National Resources' property, it is equally clear that he <u>constructively</u> seized the debt that National Resources owed the judgment debtor.  On September 30, 2011, Pesiri effectively served the Writ on National Resources.  <u>See</u> Affidavit Re: Memorandum in Opposition to Motion to Enforce Judgment and for Turnover Order Ex. T (Doc. No. 42-3); <u>see</u> <u>also</u> Turnover Order at 6 (finding Pesiri's service of National Resources to be effective) (affirmed by <u>Corsair Special Situations Fund, L.P. v. Nat'l Resources</u>, 595 Fed.Appx. 40 (2d Cir. 2014) .  By so doing, Pesiri made demand on National Resources that it deliver to him property in its possession that it owed the judgment debtor.  <u>See</u> Turnover Order at 2-3.  When Pesiri properly served National Resources with the Writ, he imposed upon National Resources a legal obligation to pay him the money it owed the judgment debtor, rather than paying the judgment debtor directly.  While Pesiri did not actually seize the money that National Resources owed the judgment debtor, he did constructively seize it by putting National Resources on notice of its legal obligation to deliver the money it owed the judgment debtor to Pesiri.  And, given that "levy" has been defined as an actual or constructive seizure, Pesiri's constructive seizure of the debt owed by National Resources to the judgment debtor constitutes a levy.

This conclusion is buttressed by the fact that there was nothing more that Pesiri could have done under the circumstances than what he did.  Corsair argues that, in order for Pesiri to become entitled to the 15%, he would have had to have actually

---

[4] The court interprets the final sentence of the excerpted passage from <u>Nemeth</u> as describing a constructive seizure.

seized National Resources property.  However, the statute governing property executions specifically does not authorize an officer to actually seize property belonging to the judgment debtor that is in the possession of a third party.  Property executions are covered by C.G.S.A. § 52-356a.  Under the property execution statute, if the judgment debtor is not a natural person, and if the debt owed the judgment creditor is in the possession of a third party, both of which are the case here, "the levying officer shall serve that person with a copy of the execution and that person shall forthwith deliver the property or pay the amount of the debt due or payable to the levying officer, provided, if the debt is not yet payable, payment shall be made when the debt matures if within four months after issuance of the execution."  C.G.S.A. § 52-356a(a)(4)(B).  Thus, when the judgment debtor's property is in a third party's possession, the property execution statute only permits the officer to make demand of the third party.

On the other hand, when the judgment debtor maintains possession of the property owed to the judgment creditor, the officer is authorized to make demand on the judgment debtor and, if that fails, to "levy on nonexempt personal property of the judgment debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment . . ." C.G.S.A. § 52-356a(a)(4).  Further, when the officer is levying the property of the judgment of the judgment debtor, as opposed to the third party, the statute describes levying property as follows:  "[i]f such nonexempt personal property is in the possession of the judgment debtor, the levying officer shall take such property into his possession as is accessible without breach of the peace." C.G.S.A. § 52-356a(4)(A).  Thus, while an officer is empowered to take physical possession of the judgment debtor's property that is in the judgment debtor's possession, he is not

10

empowered to take physical possession of the judgment debtor's property that is in the third party's possession.  Nevertheless, despite this distinction, the statute still refers to the officer who makes demand on the third party as the "levying officer."  C.G.S.A. § 52-356a(a)(4)(B).  Further, the statute obliquely refers to the officer's making demand on the third party as levying on the property, by stating that: "[l]evy under this section on property held by, or a debt due from, a third person shall bar an action for such property against the third person provided the third person acted in compliance with the execution."  C.G.S.A. § 52-356a(a)(5).  Thus, the statutory language supports the conclusion that, when an officer makes demand upon a third party in possession of the judgment debtor's property by serving the third party with a property execution, the officer has levied the execution.

Corsair's reliance on Norwalk Cove Marina, Inc. v. Pesiri, No. CV010186717S, 2004 WL 3130561 (Conn. Super. Ct. Dec. 20, 2004) for the proposition that, in order to qualify for the 15% fee Pesiri would have had to actually seize the property in National Resources' possession, is misplaced.  In that case, the same Marshal Pesiri who is the interested party in this case, "served a writ of execution and, pursuant to such writ, actually seized $200,274.57 from a bank account titled in the name of Norwalk Cove Marina."  Pl.'s Mot. for Award of Fees Opp'n at 7-8 (emphasis in the original).  However, in that case, Pesiri was acting pursuant to a bank execution, which is different from a property execution.  See Norwalk Cove Marina, at *1 ("Thereafter, before the defendant sheriff had disbursed the proceeds of the bank execution to any party . . . ") (emphasis added).  Bank executions for non-natural persons, which the judgment debtors and third parties are, and which the judgment debtor in Norwalk Cove Marina was, are covered

11

by C.G.S.A. § 52-267a.  Under the bank execution statute, after the officer serves the bank with the execution, "the financial institution shall immediately pay to such serving officer the amount removed from the judgment debtor's account," assuming certain circumstances not relevant here do not apply.  C.G.S.A. § 52-367a(c).  Then, again assuming the absence of certain circumstances not relevant here, "the serving officer shall thereupon pay such sum, less such serving officer's fees, to the judgment creditor."  C.G.S.A. § 52-367a(h).  Thus, when Pesiri was acting pursuant to the bank execution that the judgment creditor had obtained in <u>Norwalk Cove Marina</u>, he was legally empowered to actually seize the funds that were in the judgment debtor's bank account.

On the other hand, when Pesiri was acting pursuant to the property execution obtained by Corsair, and specifically when Pesiri was serving the property execution on the National Resources, he was not similarly empowered to actually seize the property in the third party's possession.  Rather, he was limited to a constructive seizure of that property.  Nevertheless, this distinction does not support the conclusion that Pesiri did not adequately levy the execution on National Resources.  Rather, as already discussed, the court concludes that Pesiri did levy the execution on National Resources when he served National Resources with the Writ, made demand upon National Resources, and constructively seized the money that National Resources owed the judgment debtor.  Having done so, when the money was paid to Corsair, Pesiri was entitled to his fee under C.G.S.A. § 52-261(a).

III.    **CONCLUSION**

For the foregoing reasons, the Motion for Award of Fees (Doc. No. 98-1) is

**GRANTED**.  Mr. Pesiri is entitled to a fee of $346,275.60.

**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of January 2016.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge